OPINION
{¶ 1} Appellant, Nicholas Prodonovich, appeals from judgment entries of the Lake County Court of Common Pleas, denying his motion to withdraw a guilty plea and sentencing him to five consecutive ten-month prison terms. For the reasons that follow, we affirm.
 {¶ 2} On November 21, 2001, appellant was indicted by the Lake County Grand Jury on twenty six separate counts. The counts included theft, grand theft, forgery, passing bad checks, identity theft, and tampering with evidence. Appellant waived the right to be present at his arraignment. Accordingly, the trial court entered a plea of not guilty on his behalf.
 {¶ 3} This matter was ultimately set for a trial date of April 2, 2002. On April 2, 2002, just prior to trial, appellant entered a written guilty plea to the following counts: (1) five counts of identity theft, in violation of R.C. 2913.49(B), all fourth degree felonies; (2) two counts of forgery, in violation of R.C. 2913.31(A)(3), each a fifth degree felony; (3) one count of grand theft, in violation of R.C.2913.02(A)(3), a fourth degree felony; and (4) one count of attempted tampering with evidence, in violation of R.C. 2923.02 and 2921.12(A), a fourth degree felony. In accord with appellant's guilty plea, the trial court nolled the remaining counts of the indictment.
 {¶ 4} During a plea hearing, the trial court advised appellant of the specific constitutional and non-constitutional rights that would be waived as a result of his guilty plea. Appellant informed the court that he understood these rights and that his guilty plea would result in a waiver of these rights. The court then asked appellant whether he was satisfied with his appointed counsel's representation. Appellant answered affirmatively. In addition, appellant signed a written guilty plea which stated he was making the plea voluntarily and knowingly.
 {¶ 5} The trial court accepted appellant's guilty plea, and he was convicted of five counts of identity theft, two counts of forgery, one count of grand theft, and one count of attempted tampering with evidence. Upon appellant's request, the trial court deferred sentencing until May 31, 2002.
 {¶ 6} Following his guilty plea, appellant obtained new counsel. On May 30, 2002, appellant filed a motion to withdraw his guilty plea and vacate his conviction. Appellant's motion alleged that he did not fully understand the nature of the charges against him and the penalties that could be imposed as a result of the guilty plea. Moreover, the motion maintained that appellant's former appointed counsel, Laura Depledge ("Depledge"), was not fully prepared for trial and she pressured him into accepting a guilty plea.
 {¶ 7} The trial court conducted a hearing on appellant's motion to withdraw. Appellant and Depledge testified at the hearing. Appellant testified that he intended to go to trial on April 2, 2002, but Depledge was not prepared. He stated that Depledge had a separate trial scheduled contemporaneously with his trial. Due to this scheduling conflict, appellant maintained that Depledge coerced him into entering a guilty plea and allowed a different attorney to represent him at the withdrawal of plea hearing. Specifically, appellant testified Depledge informed him that his trial could be continued for a later date if he pleaded guilty, as he had an absolute right to withdraw the plea prior to sentencing. He further stated that Depledge made this promise in a written letter.
 {¶ 8} Depledge testified that despite the separate trial, she was prepared to go forward with appellant's trial. In particular, Depledge stated that her co-counsel was prepared to proceed with the separate trial, while she would have proceeded with appellant's trial. She further testified that appellant had informed her approximately a week before the April 2, 2002 trial date that he wished to change his plea to guilty. As a result, plea negotiations were concluded on the day of trial. More importantly, Depledge testified that she never told appellant his guilty plea could be withdrawn at a later date, thereby continuing this matter. Instead, she informed him that he did not have an absolute right to withdraw his guilty plea and a judge would have to determine whether his plea could be withdrawn. Finally, Depledge testified that she in no way pressured or coerced appellant to plead guilty.
 {¶ 9} Following the hearing, the court issued a judgment entry denying appellant's motion to withdraw his plea. The court found that "[t]here is no evidence [appellant's] plea was not a voluntary and intelligent choice among alternative courses of action open to him. * * * [T]here is no evidence he was coerced or threatened. [Appellant] has failed to show a reasonable and legitimate basis in withdrawing his plea."
 {¶ 10} Thereafter, the court conducted a sentencing hearing and issued appellant's sentence. The court sentenced appellant to prison terms of ten months each on the five counts of identity theft, with the terms to run consecutively. Appellant was sentenced to serve prison terms of nine months each on the two forgery counts, and prison terms of ten months each on the count of grand theft and attempted tampering with evidence; these prison terms were to run concurrently to each other and concurrently to the consecutive prison terms for identity theft.
 {¶ 11} From this judgment, appellant filed a timely notice of appeal and now sets forth the following two assignments of error:
 {¶ 12} "[1.] The trial court erred as a matter of law and to the prejudice of defendant-appellant when it refused to allow him to withdraw his plea prior to sentencing, thereby violating his due process rights under the United States and Ohio Constitutions.
 {¶ 13} "[2.] The trial court erred to the prejudice of the defendant-appellant when it ordered consecutive sentences and exceeded the minimum prison terms."
 {¶ 14} Under his first assignment of error, appellant argues that the trial court erred in denying his motion to withdraw the guilty plea. Appellant first contends that the record confirms the trial court's failure to comply with Crim.R. 11 at the plea hearing and, therefore, his plea was not voluntarily and knowingly made. In support of this contention, appellant maintains that his qualified answers to the court's inquiries regarding his understanding of the charges and his waiver of rights establish his inability to comprehend the consequences of the guilty plea.
 {¶ 15} In addition, appellant argues that even if the court complied with Crim.R. 11, evidence at the withdrawal of plea hearing demonstrated that Depledge provided him with incorrect legal advice, thereby inducing his guilty plea. Specifically, appellant maintains his testimony at the plea hearing proved that Depledge improperly informed him that he had an absolute right to withdraw his guilty plea at anytime prior to sentencing. Appellant states that Depledge was motivated to obtain his guilty plea based upon her failure to prepare for his trial and her scheduling conflict with a separate contemporaneous trial.
 {¶ 16} Crim.R. 32.1 provides that a motion to withdraw a guilty plea shall be made prior to sentencing, except to correct a manifest injustice. Although a pre-sentence motion to withdraw a guilty plea shall be freely allowed, "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." State v. Xie (1992), 62 Ohio St.3d 521, paragraph one of the syllabus.
 {¶ 17} The decision to grant or deny a pre-sentence motion to withdraw a guilty plea is within the sound discretion of the trial court. Id. Accordingly, a reviewing court will not reverse the trial court's decision absent an abuse of discretion. Id. at 526. An abuse of discretion connotes more than an error of law or judgment; rather, it implies the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 18} Crim.R. 11(C) governs the trial court's acceptance of a guilty plea to a felony offense. This rule provides, in relevant part:
 {¶ 19} "(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 {¶ 20} "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 {¶ 21} "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 {¶ 22} "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."
 {¶ 23} Here, the record reveals that during the trial court's colloquy with appellant, he was properly advised of the relevant constitutional and non-constitutional rights encompassed by Crim.R. 11(C). Nevertheless, appellant maintains that his qualified answers during the trial court's colloquy demonstrate he did not comprehend the consequences of his guilty plea. We disagree.
 {¶ 24} To determine whether a defendant understands the ramifications of his or her guilty plea, the court must engage in an oral dialogue with the defendant who is entering the plea. State v. Razo,157 Ohio App.3d 578, 2004-Ohio-3405, at ¶ 6. Because appellant's challenge on appeal does not pertain to the various constitutional rights of Crim.R. 11(C), strict compliance is not the applicable standard of review. State v. Porterfield, 11th Dist. No. 2002-T-0045, 2004-Ohio-520, at ¶ 24. Instead, the record of the trial court's colloquy must confirm that the court substantially complied with the mandates of Crim.R. 11(C). State v. Nero (1990), 56 Ohio St.3d 106, 108. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." Id.
 {¶ 25} Appellant cites to the following portions of the court's colloquy as proof that he did not understand the implications of his guilty plea:
 {¶ 26} "The Court: Do you understand that you have the right to have the Court compel witnesses to appear and testify on your behalf by way of subpoena; do you understand you'll be giving up that right, as well, here, this morning by changing your pleas?
 {¶ 27} "Appellant: Based on the evidence that was given to me to work with, I have no choice but to change my plea.
 {¶ 28} "The Court: Well, I understand that, but do you understand that one of the rights you're giving up is to have the Court compel witnesses to testify on your own behalf and you're giving up the right to have the Court compel witnesses to do that?
 {¶ 29} "Appellant: Yes, sir, I do.
 {¶ 30} "* * *
 {¶ 31} "The Court: Do you understand that if this Court accepts your guilty pleas, that these pleas constitute your complete admission of guilt as to the charges?
 {¶ 32} "Appellant: I have no choice but to say yes sir.
 {¶ 33} "The Court: Well, I want to make sure you're saying yes voluntarily. Do you understand that if the Court accepts these guilty pleas, that that constitutes a complete admission of your guilt as to the charges; do you understand that?
 {¶ 34} "Appellant: Yes, sir.
 {¶ 35} "* * *
 {¶ 36} "The Court: Are you, in fact, guilty of these charges?
 {¶ 37} "Appellant: I must change my plea to guilty, your Honor.
 {¶ 38} "The Court: Are you guilty of the charges? Yes or no?
 {¶ 39} "Appellant: Yes."
 {¶ 40} Appellant's initial answers to the court's inquiries fail to establish that appellant did not understand the implications of his guilty plea. Instead, appellant's initial answers merely confirm that appellant believed that he could not prove his innocence. More specifically, these statements show that appellant had evaluated the relevant evidence and determined that, if this matter had been brought to trial, he would be found guilty. Appellant's belief that he would ultimately be found guilty of the charges in no way demonstrates that he was unable to comprehend the court's advisements with respect to the consequences of his guilty plea.
 {¶ 41} Moreover, read in full context, the court properly readdressed its inquiries to appellant following his ambiguous answers. This allowed the court to more fully assess appellant's comprehension of his guilty plea. After the court restated each inquiry, appellant answered that he understood the consequences discussed. Also, the written guilty plea signed by appellant established his knowledge of his rights and the effect of his guilty plea on these rights.
 {¶ 42} Again, it was not necessary for the record to establish the court's strict compliance with the non-constitutional mandates of Crim.R. 11(C). Rather, because the totality of the circumstances demonstrate that appellant subjectively understood the implications of his plea and the rights he was waiving, the record confirms the trial court's substantial compliance with Crim.R. 11(C). Thus, this portion of appellant's first assignment of error is not well-taken.
 {¶ 43} Appellant further challenges the validity of the court's denial of his motion to withdraw predicated upon his testimony at the withdrawal hearing. He contends that his testimony at the hearing demonstrated he received improper legal advice from Depledge. Specifically, appellant testified that Depledge informed him that he could withdraw his plea at any time prior to sentencing. He stated that Depledge had written him a letter corroborating this statement; however, he failed to introduce evidence of the letter as an exhibit. Appellant further testified that Depledge was motivated to use this misinformation to coerce his guilty plea and resolve a scheduling conflict.
 {¶ 44} Depledge provided contradictory testimony which revealed that she had told appellant his right to withdraw the guilty plea was not absolute and a judge would have to determine whether the plea could be withdrawn. She also stated that the letter appellant referred to merely reiterated her advisement regarding the guilty plea. Depledge testified that, despite the scheduling conflict, she was prepared to proceed to trial if appellant decided against pleading guilty.
 {¶ 45} Clearly, this portion of appellant's first assignment of error turns upon witness credibility. When assessing witness credibility during a withdrawal hearing, the trial court is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and utilize these observations to weigh the credibility of the proffered testimony. State v. Uribe (Mar. 5, 1999), 2nd Dist. No. 17044, 1999 Ohio App. LEXIS 843, at 9-10. Accordingly, the credibility and weight of a movant's assertions in support of a motion to withdraw a guilty plea is to be resolved by the trial court. State v. Smith (1977),49 Ohio St.2d 261, paragraph two of the syllabus; State v. Christley (May 19, 2000), 11th Dist. No. 99-P-0022, 2000 Ohio App. LEXIS 2140.
 {¶ 46} Here, the trial court found Depledge's testimony to be more credible than appellant's testimony. Because the credibility of the witnesses was an issue for the trier of fact, we will accord due deference to the trial court's determination.
 {¶ 47} The court's findings in this matter are procedurally accurate. During the plea hearing, appellant did not, on the record, express or indicate that he was being forced to accept a plea agreement or that he lacked faith in his substitute counsel's representation. However, it would have been beneficial for the court to have acknowledged on the record that, on the day of trial, it became evident that appellant's trial counsel was double booked and substitute counsel was handling the plea, and to explore appellant's ability to feel confidence in the advice and representation that his substitute counsel was providing. Further, the court should have explained, on the record, Depledge's absence and acknowledged appellant's consent to substituted counsel on the day of trial. This goes to the essence of effective representation and appellant's constitutional right to counsel. The court's findings, however, are supported by the record and do not amount to an abuse of discretion. Thus, this portion of appellant's first assignment of error is also not well-taken.
 {¶ 48} The trial court did not abuse its discretion by denying appellant's presentence motion to withdraw his guilty plea. Appellant's first assignment of error is without merit.
 {¶ 49} Under his second assignment of error, appellant argues that the court's sentence of five separate ten-month prison terms on the five individual counts of identity theft, with the terms to be served consecutively, was an abuse of discretion. Appellant maintains that the court failed to make sufficient findings which satisfy the statutory prerequisites for issuing a sentence that is greater than the minimum prison term and for issuing a consecutive sentence. Appellant further contends that the court's financial sanction of restitution, in the amount of $3,100, was based upon speculation and, therefore, improper.
 {¶ 50} Under R.C. 2953.08, our review of a felony sentence is de novo. State v. Bradford (June 1, 2001), 11th Dist. No. 2000-L-103, 2001 Ohio App. LEXIS 2487, at 3. However, this court will not disturb a given sentence unless we find, by clear and convincing evidence, that the record does not support the sentence or that the sentence is otherwise contrary to law. State v. Thomas (July 16, 1999), 11th Dist. No. 98-L-074, 1999 Ohio App. LEXIS 3334. Clear and convincing evidence is that evidence which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Id.
 {¶ 51} There is a presumption under R.C. 2929.14(B) that a defendant who has not previously served a prison term should receive the minimum prison term. State v. Stambolia, 11th Dist. No. 2003-T-0053, 2004-Ohio-6945, at ¶ 32. But a trial court may impose a sentence greater than the minimum if it specifies on the record "that the shortest prison term will demean the seriousness of the conduct or will not adequately protect the public from future crime by the offender." State v. Edmonson (1999),86 Ohio St.3d 324, 325, 1999-Ohio-110. Thus, R.C. 2929.14(B) requires a sentencing court to impose a minimum sentence for first-time imprisonment unless it specifies on the record that either or both of the aforementioned statutory reasons warrant a longer sentence. Edmonson at 326.
 {¶ 52} In departing from the minimum prison term, the court is required to note that it has analyzed the relevant statutory factors which resulted in this departure. Id. Generally, a sentencing court need not provide its reasoning for imposing more than the minimum prison term. See, e.g., State v. Boczek, 11th Dist. No. 2001-L-193, 2002-Ohio-6924. "However, when imposing a prison term for a felony of the fourth or fifth degree, R.C. 2929.19(B)(2)(a) provides that a trial court must state its reasons for selecting the sentence, which is to be based upon the overriding purposes and principles of felony sentencing." Id. Moreover, per R.C. 2929.14(B), a trial court is "required to make its statutorily sanctioned findings on the record at the sentencing hearing" when imposing a non-minimum sentence. State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, at ¶ 26.
 {¶ 53} In the instant case, appellant was convicted on five separate counts of identity theft, each a fourth degree felony. Consequently, the minimum prison term was six months. R.C. 2929.14(A)(4). The record before us demonstrates that appellant has never previously served a prison term. Nevertheless, the trial court departed from the minimum prison term by sentencing appellant to a ten-month prison term on each of the five counts of identity theft.
 {¶ 54} A review of the sentencing hearing transcript and sentencing judgment entry establishes the court's adherence to the statutory requirements necessary to depart from the minimum sentence. The court's findings and reasoning were made during the sentencing hearing and as part of the sentencing entry. Specifically, the court stated that the shortest prison term would demean the seriousness of appellant's conduct and would not adequately protect the public from future crime. Also, the court noted that it had considered the relevant factors of R.C. 2929.13(B) and determined that appellant had "held an office or position of trust and the offense related to that office or position. The defendant used his position as a loan officer at Country Home Mortgage, Inc. and as an employee at New Horizons to facilitate the offenses." The court further noted that multiple victims were involved, appellant's actions had caused serious economic harm, and appellant had prior bad check convictions.
 {¶ 55} Based upon the foregoing, the trial court announced its findings with respect to R.C. 2929.14(B) at the sentencing hearing and as part of its sentencing entry. The court also considered the relevant statutory factors of R.C. 2929.13(B) and announced its reasons for departing from the minimum prison term at the sentencing hearing and as part of its sentencing entry. In addition, clear and convincing evidence supports the court's findings and reasoning. Thus, the court complied with Comer and R.C. 2929.14(B) when it departed from the minimum prison term. This portion of appellant's second assignment of error is not well-taken.
 {¶ 56} When imposing consecutive sentences, the trial court must first determine that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]" R.C.2929.14(E)(4). Next, the trial court must find that one of the following factors listed in R.C. 2929.14(E)(4) is also present: (a) that the offender was awaiting trial or sentencing or was under community control sanctions; (b) that the harm caused by the offenses was so great that a single prison term would not adequately reflect the severity of the conduct; or (c) that the offender's prior criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime. State v. Norwood (June 8, 2001), 11th Dist. No. 2000-L-072, 2001 Ohio App. LEXIS 2573.
 {¶ 57} The court must also follow the requirements set forth in R.C.2929.19(B) when sentencing an offender to consecutive sentences. Specifically, R.C. 2929.19(B)(2)(c) requires that the trial court justify its imposition of consecutive sentences by making findings that give the court's reasons for selecting that particular sentence.
 {¶ 58} In the past, this court has held that the findings mandated by R.C. 2929.19(B)(2)(c) and 2929.14 "must appear somewhere on the record of sentence, either in the judgment or in the transcript of the sentencing hearing." State v. Rone (Dec. 4, 1998), 11th Dist. No. 98-A-0001, 1998 Ohio App. LEXIS 5813, at 6. See, also, State v. Hoskins (Mar. 16, 2001), 11th Dist. No. 2000-A-0037, 2001 Ohio App. LEXIS 1232. Recently, however, in Comer, the Ohio Supreme Court held that when ordering a defendant to serve consecutive sentences, the trial court must also make its statutorily required findings at the sentencing hearing. Id. at paragraphs one and two of the syllabus.
 {¶ 59} In the case sub judice, the court sentenced appellant to five consecutive ten-month prison terms on the five separate counts of identity theft. At the sentencing hearing, and as part of its sentencing entry, the court set forth the relevant statutory findings and reasons for consecutive sentences. The court stated that consecutive sentences were necessary to protect the public from future crime or to punish appellant, and were not disproportionate to the seriousness of his conduct and the danger he poses to the public. The court further determined that the multiple offenses committed by appellant were so great or unusual that no single prison term for any of the offenses committed reflects the seriousness of appellant's conduct.
 {¶ 60} With respect to the aforementioned findings, the court provided the following reasons in support: (1) there were five separate victims of identity theft; (2) appellant's identity theft caused serious economic harm; (3) appellant's identity theft had a negative effect on the victims' credit ratings; and (4) appellant exploited a position of trust as a loan officer to facilitate the identity theft.
 {¶ 61} The court further found that appellant's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime by appellant. Specifically, the court noted that appellant had two prior bad check convictions and two probation violations which were a result of a bad check conviction. The court further stated that after the current offenses were committed, appellant was convicted in Willoughby Municipal Court on a charge involving check fraud. Finally, the court determined that appellant showed a total lack of remorse.
 {¶ 62} The foregoing demonstrates the court's compliance with Comer
and the statutory prerequisites for issuing consecutive sentences. The court's findings and reasons for issuing consecutive sentences are substantiated by the record and were made part of the sentencing entry and sentencing hearing. Thus, this portion of appellant's second assignment of error is not well-taken.
 {¶ 63} Finally, appellant contends the court erred in ordering him to pay $3,100 in restitution. Appellant argues that the court's order to pay restitution was based upon speculation of his ability to pay the sanction and the amount to be paid to the victim.
 {¶ 64} R.C. 2929.18(A) authorizes the court to order the financial sanction of restitution, to wit:
 {¶ 65} "* * * [T]he court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section. * * *
 {¶ 66} "(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. * * * If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense."
 {¶ 67} A trial court is not required to conduct a separate hearing to determine the defendant's present and future ability to pay the amount of his or her sanction or fine. State v. Riegsecker, 6th Dist. No. F-03-022, 2004-Ohio-3808, at ¶ 11, citing R.C. 2929.18. However, there must be some evidence that the court considered the defendant's present and future ability to pay the sanction. Id.
 {¶ 68} Here, the court's sentencing entry determined appellant "is able to pay a financial sanction of restitution or is likely in the future to be able to pay a financial sanction." The record substantiated this determination as it was evident that appellant had consistent gainful employment from 1977 to the time of his indictment. Also, appellant was well educated with a bachelor's degree in hospital administration from The Ohio State University and a bachelor's degree in mechanical engineering from Pennsylvania State University. Thus, the court properly considered appellant's future and present ability to pay the restitution and its determination in this regard was not speculative.
 {¶ 69} The court further noted that the $3,100 restitution was to be paid to Julian Erkins ("Erkins"). A presentence investigation report established that appellant's actions resulted in three fraudulent checks issued to appellant, which caused Erkins to suffer economic loss in the amounts of $400, $800, and $1,900. Based upon the presentence investigative report, the court's decision to order restitution in the amount of $3,100 was not speculative. This portion of appellant's second assignment of error is also not welltaken.
 {¶ 70} Appellant's second assignment of error is without merit.
 {¶ 71} The foregoing analysis has established that appellant's first and second assignments of error are without merit. Accordingly, the court's denial of appellant's motion to withdraw his guilty plea and the court's sentence are hereby affirmed.
Ford, P.J., Rice, J., concur.