OPINION
{¶ 1} APPELLANT, ERIC D. WEISS, APPEALS FROM THE APRIL 28, 2004 JUDGMENT ENTRY OF THE LAKE COUNTY COURT OF COMMON PLEAS.
{¶ 2} On August 14, 2003, appellant was secretly indicted by the Lake County Grand Jury on count one, grand theft, a fourth degree felony, in violation of R.C. 2913.02(A)(3), and count two, forgery, a fourth degree felony, in violation of R.C.2913.31(A)(2). On August 22, 2003, appellant entered a plea of not guilty to the charges.
{¶ 3} On February 19, 2004, appellant filed a motion to suppress. A hearing was held on April 8, 2004.
{¶ 4} The record revealed that the Montville Police Department, working with the Bureau of Criminal Investigation and Karen Sweet from the attorney general's office ("Investigator Sweet"), conducted an investigation of appellant for the crime of theft by fraud, which occurred in Montville, Ohio, Medina County, involving Midwest Underground Technologies ("Midwest"). Appellant had contracted with Midwest for the purchase and installation of computer equipment. At around the same time period, appellant was a subcontractor on a contract for Laurelwood Hospital ("Laurelwood"), located in Lake County, Ohio.
{¶ 5} During the pendency of this investigation, appellant was incarcerated for an unrelated offense in Cuyahoga County on May 25, 2002, and his car was impounded and held at Dejans Continental Auto Clinic ("Dejans") in North Royalton, Ohio.
{¶ 6} Montville Police Sergeant Chris Ryba ("Sergeant Ryba") sought and obtained a search warrant from Judge Gilligan, of the Parma Municipal Court, to search the trunk of appellant's car at Dejans for evidence relating to the crime committed in Medina County.
{¶ 7} On May 29, 2002, the Montville police officers executed the warrant, and evidence was obtained from the vehicle. The evidence led to another investigation resulting in the current charges.
{¶ 8} That investigation established that in 2000, appellant discovered, through a friend at Laurelwood named Janice Anderson, that the hospital was seeking bids for the installment of a phone service and computer equipment. Appellant enlisted the services of, and contracted with, a company called B-Tech Corporation ("B-Tech"), and through that contract, introduced B-Tech to Laurelwood. Appellant was B-Tech's subcontractor under the resulting contract between B-Tech and Laurelwood, responsible for the purchase and installation of computer equipment. The contract required that appellant invoice, and receive payment from, B-Tech for his services. Although appellant neither purchased any computer equipment, nor installed computer equipment at Laurelwood, he sent a bill to BT-ech for $24,589, which was paid, and whereupon B-Tech billed Laurelwood for the same amount. On February 26, 2001, appellant also sent a bill to Laurelwood for $15,174 for the same equipment, and received payment on June 25, 2001. Laurelwood, in paying the bills from both B-Tech and appellant, did not realize it had paid twice for equipment it had never received.
{¶ 9} Appellant moved to suppress the evidence arising from the May 29, 2002 search, on the grounds that the affidavit for the search warrant did not contain sufficient information to establish probable cause for the issuance of the warrant.
{¶ 10} In an entry dated April 14, 2004, the trial court denied appellant's motion.
{¶ 11} On April 28, 2004, appellant entered a plea of no contest on both counts. Pursuant to its April 28, 2004 judgment entry, the trial court sentenced appellant to eighteen months on the grand theft charge and eighteen months on the forgery charge, to run consecutively. This sentence was ordered to run consecutive to appellant's existing prison term. Appellant was also sentenced to pay $15,174.00 in restitution. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
{¶ 12} "[1.] The trial court erred to the prejudice of appellant by denying his motion to suppress under the good faith exception to the exclusionary rule.
{¶ 13} "[2.] The trial court erred to the prejudice of appellant by imposing consecutive sentences.
{¶ 14} "[3.] The trial court erred to the prejudice of appellant by imposing the maximum prison term for grand theft and forgery where the record does not support the findings required by [R.C.] 2929.14(C)."
{¶ 15} In his first assignment of error, appellant argues that the trial court's finding that the good faith exception to the exclusionary rule applied to the search was unsupported by any competent, credible evidence in the record.
{¶ 16} Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of the trier of facts. State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. As such, it is primarily responsible for evaluating the weight of the evidence and the credibility of witnesses. State v. Brinkley,105 Ohio St.3d 231, 2005-Ohio-1507, at ¶ 58. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Burnside, supra, at ¶ 8. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. Id.
{¶ 17} The initial issue this court must address is whether the trial court found that probable cause existed for the issuance of the search warrant. The test for determining whether probable cause exists for issuing a search warrant is the "totality of the circumstances" test, set forth as follows in Illinois v. Gates (1983), 462 U.S. 213, 238-239:
{¶ 18} "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a `substantial basis for * * * (concluding)' that probable cause existed."
{¶ 19} Gates made clear that the role of both the trial court and appellate court is limited in reviewing the issuance of a search warrant by a judge or magistrate. The Ohio Supreme Court, in State v. George (1989), 45 Ohio St.3d 325, 330, stressed that reviewing courts may not substitute their own judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause, and further should accord great deference to the magistrate's determination of probable cause.
{¶ 20} Crim.R. 41(C) provides that an affidavit for a search warrant must describe, with specificity, the place to be searched and the property to be seized. The information in the affidavit must be sufficient enough to allow a magistrate to determine probable cause, and cannot be a ratification of the bare conclusions of others. United States v. Leon (1984),468 U.S. 897, 915; State v. Hollis (1994), 98 Ohio App.3d 549, 555.
{¶ 21} In the present case, the trial court was unclear in its ruling on probable cause. During the suppression hearing, when the court discussed what part of the record it should consider, the parties agreed that it included the affidavit and the search warrant. However, based on their knowledge that Sergeant Ryba and Investigator Sweet were present at the time the warrant was issued, and that oral testimony had been taken under oath, the parties also stipulated that other additional information had been received by Judge Gilligan which had not been transcribed or made part of the record.
{¶ 22} Upon reviewing the affidavit and search warrant, and considering the arguments of both parties, the trial court's primary inquiries centered around (1) the lack of a date in the affidavit (with the court querying how the magistrate knew that the "stuff was still in the car[,]" and noting that he would question an officer on such issues before determining if he would get the warrant); (2) the sufficiency of the vehicle being named as a Ford Taurus (with the court giving examples of better specificity such as a "1992 dark blue [one] or an older model four door Ford Taurus"); and (3) the failure of the affidavit to identify the reliable informant (with the court asking "[s]houldn't the issuing [j]udge have known that" and the state replying "[p]erhaps the [j]udge did know that").
{¶ 23} The trial judge stated that the search warrant was "as bare bones as it gets" and "very minimalist;" something he would not sign without "fleshing out and asking about how reliable is the reliable source." Nonetheless, as required by Gates and George, he seemed to defer to Judge Gilligan in stating that "I'm assuming that the [j]udge probably * * * fleshed this out[,]" and in acknowledging that "the [j]udge had to have been satisfied that probable cause exist[ed], and as the parties stipulate, certainly the [j]udge had before him more information than * * * what is contained [in] this [a]ffidavit."
{¶ 24} Finally, the trial judge found the following:
{¶ 25} "The [s]earch [w]arrant does name and describe the place to be searched and the property to be searched for and seized. It does state substantially the offense, in being [t]heft by [d]eception. It does state in some [regard] the factual basis for the [a]ffiant's belief that the property is located in that car."
{¶ 26} The trial judge opined that it would have been a better practice to "write down a little bit more explanatory material * * * or to have a court reporter or recording device take down the information, * * * [h]owever, that's up to the [j]udge[.]"
{¶ 27} Thereafter, the trial court did not specifically find whether or not the magistrate had a "substantial basis" for concluding that probable cause existed for issuing the search warrant. Instead, the court moved on to facts relating to the "good faith exception" to the exclusionary rule, and found that it applied in this case.
{¶ 28} Before this court would be able to address appellant's argument that the application of the good faith exception to the exclusionary rule was improper, it would first have to find — absent the trial court's finding on probable cause — that the magistrate did not have a substantial basis for concluding that probable cause existed. However, this court is unable to make this substantial basis determination, since the record before it contains neither the affidavit nor the search warrant. Pursuant to App.R. 9(B), appellant has the burden to ensure that those portions necessary for the determination of an appeal are filed with the appellate court. State v. Crouse (Dec. 6, 1999), 12th Dist. No. CA98-100-16, 1999 Ohio App. LEXIS 5717, at 28. Absent such needed records, appellant cannot demonstrate the claimed error, and we presume that the proceedings of the lower court — in this case the municipal court issuing the warrant — are valid. Knapp v. Edward Laboratories (1980), 61 Ohio St.2d 197, 199.
{¶ 29} Thus, appellant's first assignment of error is meritless.
{¶ 30} In appellant's second assignment of error, appellant argues that the trial court's imposition of consecutive sentences is not supported by the record.
{¶ 31} An appellate court reviews a felony sentence de novo. State v. Stambolia, 11th Dist. No. 2003-T-0053, 2004-Ohio-6945, at ¶ 30. An appellate court may conduct a "meaningful review" of a trial court's sentencing decision. State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, at ¶ 10. "Meaningful review" means that the appellate court may modify or vacate a sentence if it finds "clearly and convincingly" that the record does not support the sentence or the sentence is contrary to law. Id. at ¶ 10, citing R.C. 2953.08. Clear and convincing evidence is evidence that will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. State v. Prodonovich, 11th Dist. No. 2002-L-116, 2005-Ohio-3090, at ¶ 50, citing State v. Thomas (July 16, 1999), 11th Dist. No. 98-L-074, 1999 Ohio App. LEXIS 3334.
{¶ 32} R.C. 2929.14(E)(4) sets out three statutory factors a trial court must find to impose consecutive prison terms for convictions of multiple offenses. First, the trial court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. Second, the court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Third, the court must also determine that one of the factors listed in R.C.2929.14(E)(4)(a) through (c) exists: (a) the offender committed the multiple offenses while awaiting trial or sentencing or was under a community control sanction, (b) the harm caused by the offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of the offender's conduct, or (c) the offender's history of criminal conduct proves that consecutive sentences are needed to protect the public from future crime by the offender. Comer, supra, at ¶ 13; see, also, State v. Norwood (June 8, 2001), 11th Dist. No. 2000-L-072, 2001 Ohio App. LEXIS 2573, at 111-2.
{¶ 33} In addition to stating its R.C. 2929.14(E)(4) findings, the court is required, pursuant to R.C. 2929.19(B)(2)(c), to state its reasons for selecting consecutive sentences. These reasons must be made orally at the sentencing hearing. Comer, supra, at paragraph one of the syllabus.
{¶ 34} Here, the trial court expressly found that consecutive sentences were necessary to protect the public from future crime or to punish the offender, and were not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses. The court further determined that the crimes were committed while under community control sanction, the harm caused by the multiple offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of the offender's conduct, and appellant's criminal history demonstrated that consecutive sentences were necessary to protect the public from future crime.
{¶ 35} The trial court supported its findings with the following reasons for imposing consecutive sentences:
{¶ 36} "I find that the offense was committed while on a community control sanctions out of Summit County, for exactly the same type of offense, [t]heft by [d]eception. I find that there is a previous criminal history, including the crimes of [g]rand [t]heft, [a]ttempted [r]obbery, [f]ailure to [c]omply with the order or signal of a police officer, two counts of [f]elonious [a]ssault, and [t]heft out of Cuyahoga County. * * * I find that there's been a rehabilitation failure after the previous convictions, and a failure to respond in the past to probation, the fact that he went out and committed the same offense while on probation, for the same offense. I find * * * no genuine remorse. [I] [f]ind the offense was committed under circumstances highly likely to recur."
{¶ 37} More specifically, with regard to future crime, the court stated that "the Defendant has engaged in a large amount of criminal history, recent criminal history, and * * * unless the Defendant is stopped with a maximum amount of incarceration, he will continue to commit future crimes."[1]
{¶ 38} Since the court made the proper statutory findings and reasons for imposing consecutive sentences, which findings and reasons were supported by the record, appellant's second assignment of error lacks merit.
{¶ 39} In his third assignment of error, appellant claims that the trial court's imposition of the maximum prison terms was contrary to law and not supported by the record.
{¶ 40} R.C. 2929.14(C) governs the imposition of maximum sentences, and provides:
{¶ 41} "* * * the court * * * may impose the longest prison term authorized for the offense * * * only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
{¶ 42} In addition, the court must give its reasons if the sentence is for two or more offenses arising out of a single incident and it imposes a prison term for those offenses that is the maximum prison term allowed for the offense of the highest degree by R.C. 2929.14(A). R.C. 2929.19(B)(2)(e). The maximum prison term for a fourth degree felony is eighteen months. R.C.2929.14(A)(4).
{¶ 43} Such findings and reasons must be given at the sentencing hearing. Comer, supra, at ¶ 26.
{¶ 44} Before sentencing appellant to eighteen months on each offense, the trial court found that appellant posed the greatest likelihood of committing future crimes, and committed the worst forms of the offense. The court then stated:
{¶ 45} "My reasons for those are that the Defendant has engaged in a large amount of criminal history, recent criminal history, and that unless the Defendant is stopped with a maximum amount of incarceration, he will continue to commit future crimes. [The] [r]eason for the Court finding that he committed a worst form of the offense was because the Defendant not only billed Laurelwood Hospital, but Laurelwood Hospital paid twice on this same crime, almost $40,000.00, and that there were many other victims within the Laurelwood Hospital community, including this Gina,[2]
and including the Board of Trustees, and the other individuals who have to face further scrutiny for their [laxness]. * * * [A]nd it's this Court's belief that the Defendant is devious, and is a con artist, and this Court believes that he has attempted to con this Court."
{¶ 46} Since the record supports the trial court's properly-made findings and reasons for imposing maximum sentences, appellant's third assignment of error is without merit.
{¶ 47} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
O'Toole, J., concurs in judgment only,
O'Neill, J., dissents with Dissenting Opinion.
[1] The trial court gave this reason when addressing its decision to impose maximum sentences, but then stated, with regard to consecutive sentences, that the same rationale applies. For the sake of clarity, relevant portions of the court's reasons are repeated in the second and third assignments of error.
[2] The court meant to refer to Janice Anderson here, which was later corrected during the sentencing hearing.