OPINION
{¶ 1} Appellant, Paul Brown, appeals from a judgment entry of the Trumbull County Court of Common Pleas, convicting him of illegal conveyance of prohibited items onto the grounds of a detention facility or institution. For the following reasons, we affirm.
 {¶ 2} On February 12, 2004, appellant was indicted by the Trumbull County Grand Jury on one count of illegal conveyance of prohibited items onto the grounds of a detention facility or institution, a third degree felony in violation of R.C.2921.36(C)(G)(2). Appellant entered a plea of not guilty and represented himself as a pro se defendant throughout the lower court proceedings.
 {¶ 3} This matter proceeded to a jury trial, and the following facts were revealed. On the morning of January 22, 2004, at approximately 6:15 a.m., an officer of the Trumbull County Correctional Institution patrolled the outer perimeter of the prison. Visibility was low due to snowfall. However, as the officer patrolled the perimeter, he noticed fresh footprints leading toward the outer prison fence, which was adjacent to the prison's recreational yard. Upon further investigation, a balled up sock in a small divot of snow was discovered near the footprints. Based upon the location of the sock, it was apparent that the sock had been thrown over the outer fence in an attempt to place the sock in the recreational yard.
 {¶ 4} The sock was brought inside the prison where its contents were inventoried. Inside the sock were the following items: (1) baggies of crack-cocaine; (2) baggies of marijuana; (3) a balloon; and (4) cigars.
 {¶ 5} Sharon Chilson ("Chilson"), a prison investigator, began to investigate the origin of the sock. Chilson's investigation focused upon the prisoner recreational-aides as suspects. The recreational aides were Chilson's primary suspects based upon their access to the recreational yard. To further her investigation, Chilson began to review taped phone conversations of the recreational aides.
 {¶ 6} Chilson testified that the prison's Inmate Telephone Monitoring System ("ITMS") taped the prisoner's phone conversations. She further testified that ITMS was her responsibility and that she was certified to operate ITMS. ITMS allowed Chilson to pinpoint and review taped phone conversations made by prison inmates during a specific time period. ITMS also allowed Chilson to obtain the phone numbers contacted by the prisoners.
 {¶ 7} Ultimately, Chilson reviewed the taped phone conversations of prisoner recreational-aide, Larry Dawson ("Dawson"). These taped phoned conversations revealed that, just prior to the discovery of the contraband, Dawson and an individual outside the prison had formulated a plan to smuggle drugs into the prison. A report from ITMS established that Dawson's calls were made to appellant's home phone number. Chilson also reviewed taped phone calls placed by Dawson to appellant after the sock was discovered. During these taped calls, appellant attempted to explain to Dawson where he had thrown the sock.
 {¶ 8} In conjunction with Chilson's testimony, Edward Cantor ("Cantor"), appellant's parole officer, testified that appellant had provided him with his home telephone number. Cantor verified that the home phone number provided by appellant was identical to the ITMS telephone number contacted by Dawson during the taped phone conversations.
 {¶ 9} Additional testimony at trial revealed that appellant was a former inmate at the prison and that he had formed a strong relationship with Dawson while incarcerated. It was also established that appellant had knowledge as to the manner in which the prison was patrolled and the recreational aides' access to the recreational yard.
 {¶ 10} Arthur Foreman worked as an officer at the prison. He testified that he spoke with appellant on a daily basis for approximately four years. When the state played the taped phone conversations for Foreman, he testified that it was appellant speaking with Dawson.
 {¶ 11} Vicki Casey ("Casey"), an officer with the Ohio State Highway Patrol, assisted Chilson with the investigation. As part of her investigation, Casey subpoenaed telephone records from United Telephone Company of Ohio ("United Telephone"). These records were presented at trial and corroborated Cantor's testimony with respect to appellant's phone number. Attached to the phone records was the affidavit of a Mr. Falk, attesting to the authenticity of the records.
 {¶ 12} Following trial, the jury returned a unanimous verdict of guilty. The court proceeded to enter judgment accordingly and sentenced appellant.
 {¶ 13} From this judgment, appellant filed a timely appeal and now sets forth the following three assignments of error:
 {¶ 14} "[1.] The trial court erred by allowing into evidence an affidavit as a business record exception to the hearsay rule.
 {¶ 15} "[2.] The trial court erred and abused its discretion, to the prejudice of the appellant, by permitting a witness to testify that had not been disclosed during discovery.
 {¶ 16} "[3.] The appellant's conviction for illegal conveyance of prohibited items onto the grounds of a detention facility or institution is against the manifest weight of the evidence."
 {¶ 17} At the outset we note that appellant has been appointed counsel for representation on appeal. Nevertheless, despite appellant's pro se status during the lower court proceedings, he was presumed to have knowledge of the law and of correct legal procedure. State v. Desellems, 11th Dist. No. 2004-L-0057, 2005-Ohio-4334, at ¶ 17. Appellant's pro se status did not entitle him to special treatment as he is held to the same standards as other represented litigants. Id. Thus, procedural or substantive errors made by appellant during the lower court proceedings will not be excused due to his self-representation. Id.
 {¶ 18} For purposes of clarity, we will discuss appellant's assignments of error out of order. Under his second assignment of error, appellant maintains that the trial court committed reversible error when it failed to exclude Foreman's testimony and failed to properly sanction the state for a discovery violation. Appellant's argument is predicated upon the state's failure to provide Foreman's name as a testifying witness during discovery. Thus, appellant concludes that a new trial should be granted.
 {¶ 19} Pursuant to Crim.R. 16(E)(3), the trial court is vested with a certain amount of discretion to determine what, if any, sanction should be imposed for a discovery violation. Statev. Smith (Aug. 10, 2001), 11th Dist. No. 2000-A-0052, 2001 Ohio App. LEXIS 3531, at 8. Crim.R. 16(E)(3) provides for the following sanctions:
 {¶ 20} "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit thediscovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." (Emphasis added.)
 {¶ 21} On appeal, the reviewing court is limited to a determination of whether the trial court's judgment concerning sanctions constituted an abuse of discretion. State v. Green
(Dec. 26, 1997), 11th Dist. No. 96-T-5491, 1997 Ohio App. LEXIS 5861, at 10. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v.Adams (1980), 62 Ohio St.2d 151, 157. But the trial court's discretion in relation to a discovery sanction is limited by the Ohio Supreme Court's holding in Lakewood v. Papadelis (1987),32 Ohio St.3d 1, wherein the court stated:
 {¶ 22} "A trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction thatis consistent with the purpose of the rules of discovery." (Emphasis added.) Id. at paragraph two of the syllabus.
 {¶ 23} The Criminal Rules attempt to remove the element of gamesmanship from a trial. State v. Howard (1978),56 Ohio St.2d 328, 333. And the overall purpose of the discovery rules is to produce a fair trial. State v. Mitchell (1975),47 Ohio App.2d 61, 80. "`A continuance, upon proper motion, is a favored method to avoid prejudice which may flow from a failure to provide discovery.' * * * Where a party fails [to] ask for a continuance, a trial court may properly conclude that the defendant is prepared to proceed." (Internal citations omitted.)State v. Hirtzinger (1997), 124 Ohio App.3d 40, 48.
 {¶ 24} Here, the record demonstrates that on the first day of trial it became evident to the parties involved that Foreman's name had been inadvertently omitted from the state's witness list. Once the omission was brought to the trial court's attention, the court proceeded to evaluate the situation. Subsequent to its evaluation, the court determined that a delay of Foreman's testimony was necessary to give appellant the opportunity to speak with Foreman prior to cross-examination. In addition, the court offered to grant appellant a reasonable continuance if appellant ascertained that the delay did not provide adequate time to prepare for cross-examination.
 {¶ 25} As a result of the delay, appellant was able to speak with Foreman prior to trial. However, appellant never notified the court that a continuance was necessary for further preparation. Instead, appellant proceeded to vigorously cross-examine Foreman following the delay.
 {¶ 26} An examination of the record fails to establish that the trial court abused its discretion in regards to its discovery sanctions. To the contrary, the court properly evaluated the situation and applied the least restrictive sanctions. Moreover, there is no evidence of prejudice resulting from the court's selected sanctions. Appellant was given the opportunity for a continuance and his vigorous cross-examination of Foreman established that appellant had adequate time to prepare. Thus, the trial court did not abuse its discretion, and appellant's second assignment of error is without merit.
 {¶ 27} Under his first assignment of error, appellant contends that the trial court erred by allowing the state to present hearsay evidence of the United Telephone telephone records. Specifically, appellant maintains that the business records hearsay exception of Evid.R. 803(6) did not apply to these telephone records because Mr. Falk, as the custodian of the telephone records, was not available for cross-examination and his affidavit failed to authenticate the records.
 {¶ 28} The determination to admit or exclude evidence is within the sound discretion of the trial court and will not be reversed by an appellate court absent a showing of an abuse of discretion. State v. Sledge, 11th Dist. No. 2001-T-0123, 2003-Ohio-4100, at ¶ 20. Again, "[t]he term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Montgomery (1991), 61 Ohio St.3d 410,413.
 {¶ 29} First, we note that appellant failed to timely object to the affidavit. An appellate court will not consider any error which the defendant could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. State v. Rizzo, 11th Dist. No. 2002-T-0121, 2003-Ohio-4724, at ¶ 15. Thus, appellant has waived all but plain error on appeal. Id. Plain error does not exist unless, but for the error, the outcome of trial would have been different. State v. Moreland (1990),50 Ohio St.3d 58, 62. As a result, we will review appellant's first assignment of error under a plain error analysis.
 {¶ 30} An out-of-court statement offered to prove the truth of the matter asserted is hearsay. Evid.R. 801(C). Pursuant to Evid.R. 802, to be admissible the hearsay evidence must come within one of the hearsay exceptions under Evid.R. 803 and 804.
 {¶ 31} Evid.R. 803(6) provides a hearsay exception for regularly recorded business documents. "A telephone record or other such document can often fall with[in] the business record exception provided under 803(6)." Hirtzinger at 49, citingState v. Knox (1984), 18 Ohio App.3d 36, 37. However, Evid.R. 803(6) includes an authentication requirement which must be met before it applies, to wit.
 {¶ 32} "Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown bythe testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term `business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."
 {¶ 33} In short, the rule requires that a custodian, or other qualified witness, testify as to the regularity and reliability of the business activity involved in the creation of the record.[1] While the witness providing this foundational testimony need not have firsthand knowledge of the transaction, he or she must be sufficiently familiar with the operation of the business and with the circumstances of the record's preparation, maintenance, and retrieval. Hirtzinger at 49, citing State v.Vrona (1988), 47 Ohio App.3d 145, 148.
 {¶ 34} In the instant case, Mr. Falk's affidavit does not qualify as foundational testimony. Also, Casey as a police officer, did not have the requisite knowledge with respect to the operation of the business (United Telephone) which created the telephone records, or the circumstances of the record's preparation. The record establishes that the proper foundational testimony was not present to authenticate the United Telephone records. Thus, the trial court erred by allowing evidence of the telephone records to be presented under Evid.R. 803(6).
 {¶ 35} However, the trial court's error in this regard did not result in plain error. There were additional, duplicative submissions of evidence which demonstrated that Dawson's taped phone calls were made to appellant's home telephone number and that appellant was the individual speaking with Dawson. First, Cantor testified that the phone number provided by appellant as part of his parole information matched the phone number recorded by the prison's ITMS. Also, during cross-examination of Foreman, appellant allowed in testimony establishing Dawson had admitted that appellant was the second voice on the taped calls. And Foreman testified that he recognized the voice on the prison's tape recorded phone conversations as that of appellant. Finally, because appellant represented himself, the jury was able to compare his voice to that of the voice on the taped phone conversations.
 {¶ 36} Accordingly, appellant cannot demonstrate that, but for the trial court's error with respect to the subpoenaed telephone records, the outcome of the trial would have been different. Appellant's first assignment of error is without merit.
 {¶ 37} Under his third assignment of error, appellant contends that his conviction was against the manifest weight of the evidence. Appellant argues that the evidence presented at the trial did not establish that it was appellant speaking with Dawson on the taped phone conversations.
 {¶ 38} When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 39} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins
at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 40} When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact."State v. Awan (1986), 22 Ohio St.3d 120, 123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 WL 286594, at 3. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 41} As stated previously, there was abundant competent and credible evidence presented which demonstrated that it was appellant speaking with Dawson during the taped phone conversations. Namely, the testimony of Foreman, Cantor, and Chilson, in conjunction with the prison's ITMS phone records, clearly showed that Dawson was speaking with appellant during the taped phone conversations. Also, appellant's cross-examination allowed in Foreman's testimony of Dawson's admission that appellant's voice was the second voice on the taped calls. Finally, because the jury had the opportunity to hear appellant's voice during trial, the jury could compare his voice to the voice on the taped conversations. Ultimately, the taped conversations revealed that appellant had attempted to smuggle drugs into the prison.
 {¶ 42} The jury was in the best position to evaluate this competent, credible evidence, and we will not substitute our judgment for that of the trier of fact. Appellant's third assignment of error is without merit.
 {¶ 43} Based upon the foregoing analysis, appellant's three assignments of error are without merit. We hereby affirm appellant's conviction.
O'Neill, J., concurs,
Grendell, J., concurs in judgment only.
[1] Evid.R. 901(B)(10) is inapplicable to the case at bar.