OPINION
{¶ 1} Appellant, Delmar D. Jordan, appeals from the April 7, 2005 judgment entry of the Trumbull County Court of Common Pleas, entering a guilty verdict against him and sentencing him to five years in prison.
 {¶ 2} On November 21, 2003, appellant was indicted by the Trumbull County Grand Jury on one count: felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(2) and (D), with a firearm specification, in violation of R.C.2941.145. At his arraignment, he entered a plea of not guilty to the charge.
 {¶ 3} On January 22, 2004, appellant was charged with another count, by way of superseding indictment: having weapons while under a disability, a felony of the fifth degree, in violation of R.C. 2923.13(A)(3) and (C). Appellant also entered a plea of not guilty to this charge.
 {¶ 4} On January 17, 2005, appellant withdrew his not guilty plea with respect to the count of having weapons under a disability. He entered a plea of guilty, which the trial court accepted.
 {¶ 5} The case proceeded to trial on the remaining count, felonious assault with a firearm specification. A jury trial was held on January 18, 19, and 20, 2005. The following facts were revealed at trial.
 {¶ 6} Tara Patterson ("Patterson") testified first for appellee, the state of Ohio. Patterson stated that she went with Maurice and Marvin Chaney ("Maurice" and "Marvin") to the Golden Stallion bar on the night of October 28, 2003. She indicated that Maurice had an attitude. She asked him what was wrong, but he would not tell her. Then, "all of a sudden he jumps on the counter in front of Delmar and he's in his face." She testified that appellant was calm and said that he did not want any trouble. Appellant bought Maurice a drink and Maurice knocked it off the bar. The next thing she knew, appellant and Maurice were "standing up in each other's faces and having some words." At that point, one of the bartenders unplugged the jukebox and made everyone in the bar leave.
 {¶ 7} After that, Patterson stated that she left the Golden Stallion bar with Marvin and Maurice. They went to another bar in Niles. When they left there, Patterson said that the cell phone rang and Maurice answered it. When he hung up, he told her to go to some house on Tod Avenue. She stated that he wanted to "conversate" with appellant.
 {¶ 8} When they arrived at the house on Tod Avenue, Maurice and Marvin got out of the car and Maurice went very quickly toward the house. At that point, Patterson stated that she was talking to Keisha Williams ("Williams"), who had come to the side of the car, and when she looked up again, she saw something silver and thought it was a gun. Then she heard a gunshot and Maurice ran over to the car and said that he had been shot. She said that it looked like the person who had the gun was appellant. She stated that appellant was walking toward the car holding the gun so that you could see it. She sped out at that point and took Maurice to the hospital. She testified that she later identified appellant in a line up, which she also did during the trial.
 {¶ 9} She stated on cross-examination that appellant never hit Maurice at the bar or tried to go after him in any way. She also testified that when they got to the house on Tod Avenue, that Maurice took off his shirt before he got to appellant. When asked what that meant to her, she stated that he wanted to fight. On re-direct examination, she stated that she meant fist fight, not fight with a weapon. She also testified that Maurice did not have a weapon of any kind on him.
 {¶ 10} Investigator Edward Airhart ("Investigator Airhart"), of the Warren Township Police Department ("WTPD"), testified next for appellee. He stated that he has been in law enforcement for twenty-one years. He investigated the crime scene and collected six items as evidence, including three PMC nine millimeter Luger rounds, two CCI .380 auto casings, and a broken Heineken bottle. None of the evidence was sent to state crime labs.
 {¶ 11} Following Investigator Airhart, appellee put Lieutenant Don Bishop ("Lieutenant Bishop") of the WTPD on the stand. He testified that he had been with WTPD for over twenty years and prior to that, he had been in law enforcement for over twenty years. He is currently an administrative lieutenant. He testified that on the night of October 28, 2003, he interviewed Patterson, Matrice Johnson ("Johnson"), Marvin, and Williams. He stated that he did not interview Maurice that evening because he was transported to another hospital due to the seriousness of his injuries. He also indicated that appellant gave him a voluntary written statement first and then he videotaped his statement. At trial, Lieutenant Bishop read appellant's voluntary statement into the record and then the videotaped statement was played for the jury. Lieutenant Bishop also identified pictures that he had taken of Maurice's wounds from the gunshot and stitches from his subsequent surgery.
 {¶ 12} In his voluntary statement given to the police, appellant explained that while he was at the Golden Stallion bar having drinks with friends, Maurice and Marvin came into the bar. They said to him, "`fuck with a broke nigger now[.]'" Maurice wanted appellant to go back by the pool tables to talk. Appellant stated that he said to Maurice, "I aint fucking with you right now because you be on V's [valium] too much. And that's when he started flipping out." Appellant indicated that he bought Maurice a "double henny" and that Maurice knocked it off the bar. He said that when he got up to leave, Maurice followed him, and that he was yelling at him. Appellant then left the bar and went to his friend, Tone's, house. While he was still sitting in his van, Maurice came running up to him and hit him, yelling obscenities at him. Appellant said, "[h]e could see the gun, he still hit me."
 {¶ 13} In his videotaped statement, appellant reiterated what he said in his written statement, with some additional details. He stated that when he was at Tone's house on Tod Avenue, that he was getting ready to leave when Maurice and Marvin came. He said that he was sitting in his van with the door open. Maurice and Marvin came running up to him without their shirts on, that he had his "piece" right there, and that they could not have missed it because it was chrome and black. He also indicated that he had the gun with him at the bar. He said that he turned his head and Maurice hit him once or twice and then he shot him. He stated that he fired the gun twice before it jammed and would not shoot anymore. He indicated that he had feared for his life and that Maurice was upset because he believed that appellant cheated him out of some money.
 {¶ 14} Appellant did not present any additional evidence or witnesses besides what was proffered by appellee.
 {¶ 15} On January 21, 2005, the jury returned a verdict of guilty on the felonious assault charge and the firearm specification. The jury found by way of special verdict that appellant did not prove by a preponderance of the evidence the lesser included offense of aggravated assault or that appellant acted in self-defense.[1]
 {¶ 16} On January 27, 2005, appellant filed two motions: one, a motion for a new trial pursuant to Crim.R. 33(A)(2), alleging jury misconduct; and two, a motion for Crim.R. 29 acquittal, claiming that there were insufficient facts to substantiate the verdict. Appellee filed responses to both motions.
 {¶ 17} On March 23, 2005, the trial court held a sentencing hearing. On April 7, 2005, the trial court sentenced appellant to serve two years in prison on the felonious assault charge, and a mandatory three years on the firearm specification, to be served consecutively to the two-year term. The trial court also sentenced appellant to serve six months in prison for having weapons under a disability, to be served concurrently to a sentence out of Franklin County Common Pleas Court, Case Number 03-CR-1880, for an aggregate prison term of five years.
 {¶ 18} On April 21, 2005, the trial court also denied appellant's motion for a new trial based upon alleged jury misconduct. The trial court did not rule on appellant's motion for Crim.R. 29 acquittal. Appellant did not raise this as error.
 {¶ 19} It is from the April 7, 2005 judgment entry that appellant appeals, raising the following two assignments of error:
 {¶ 20} "[1.] The trial court erred by denying a [m]otion for a [n]ew [t]rail [sic] based upon a conviction not sustained by the weight and sufficiency of the evidence.
 {¶ 21} "[2.] The trial court erred by not granting a [m]otion for a [n]ew [t]rial based upon [j]ury [m]isconduct."
 {¶ 22} In appellant's first assignment of error, he argues that his conviction was not sustained by the weight or sufficiency of the evidence. We conclude that it was.
 {¶ 23} Sufficiency of the evidence and weight of the evidence are not synonymous legal concepts; they are both quantitatively and qualitatively different. State v. Thompkins (1997),78 Ohio St.3d 380, 386. As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13, "`[s]ufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented." In the simplest sense, sufficiency tests the burden of production, while manifest weight tests the burden of persuasion. Thompkins, supra, at 390.
 {¶ 24} In Schlee at 13, we further explained that:
 {¶ 25} "`"(* * *) [t]he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claimof insufficient evidence invokes an inquiry about due process. Itraises a question of law, the resolution of which does not allowthe court to weigh the evidence. * * * "`" (Emphasis sic.) (Citations omitted.) "In essence, sufficiency is a test of adequacy[;] [w]hether the evidence is legally sufficient to sustain a verdict * * *." Thompkins, supra, at 386. Further, we note that the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v.Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 26} With respect to appellant's sufficiency argument, we look to R.C. 2903.11(A)(2) and (D), which set forth the elements of felonious assault: "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." We conclude that appellee presented sufficient evidence.
 {¶ 27} Appellee presented appellant's written and videotaped statements. In these statements, appellant explicitly stated that he had his gun in plain sight, and that Maurice could see it. Appellant stated that even though Maurice could see the gun, he still hit him with his fist "like twice or so." When Maurice hit him, appellant said that he shot him. He further stated that he actually fired his gun two times before it jammed, meaning that he attempted to fire it a third time at Maurice.
 {¶ 28} Appellee presented further evidence that Maurice was shot in the stomach one time and that his injuries were so severe, that he had to be transported to a different hospital for surgery. Patterson testified that she drove Maurice to the house on Tod Avenue so that Maurice could converse with appellant. She stated that Maurice got out of the car and walked quickly toward appellant. Patterson said that she saw something silver and then she heard a gunshot. Immediately after hearing the shot, she said that Maurice ran back to the car, stating that he had been shot. This evidence is more than sufficient evidence upon which a jury could reasonably conclude that all of the elements of felonious assault were proven beyond a reasonable doubt.
 {¶ 29} Appellant argues, however, that he provided ample evidence to show that he responded to a threat of violence and "acted instinctively protecting his person from harm[,]" essentially that he acted in self-defense, and that alternatively, he proved that he should have only been convicted of the lesser included offense of aggravated assault.
 {¶ 30} In State v. Sledge, 11th Dist. No. 2001-T-0123, 2003-Ohio-4100, at ¶ 23, this court stated:
 {¶ 31} "[p]ursuant to R.C. 2901.05, self-defense is an affirmative defense which the defendant must prove by a preponderance of the evidence. State v. Woodruff (Dec. 31, 1997), 11th Dist. No. 96-L-111, 1997 Ohio App. LEXIS 6036, at 6, citing State v. Martin (1986), 21 Ohio St.3d 91, 94 * * *. `To establish self-defense, a defendant must prove the following elements: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.' State v.Barnes (Jan. 9, 2002), 94 Ohio St.3d 21, 24 * * *, citing Statev. Robbins (1979), 58 Ohio St.2d 74 * * *, paragraph two of the syllabus. `Thus, the possibility of one's own retreat must be eliminated in order to establish a valid claim of self-defense.'Woodruff, supra, 1997 Ohio App. LEXIS 6036, at 7." (Parallel citations omitted.)
 {¶ 32} R.C. 2903.12(A)(1) and (2) proscribes the elements of aggravated assault. It reads in part: "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly * * * [c]ause serious physical harm to another * * * [or] * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance * * *."
 {¶ 33} Appellant did not take the stand or submit any other evidence beyond what appellee proffered. Regarding his self-defense argument, although the evidence may sufficiently show that appellant was not at fault in creating the situation, it clearly does not establish that appellant had a genuine belief that he was in imminent danger of death or great bodily harm. Relying on his own written and videotaped statements, appellant had his gun in plain sight and he could not understand why Maurice would want to fight him when he could see that appellant had a gun. Appellant stated that Maurice came running toward him yelling obscenities, not running toward him with a weapon. The evidence establishes that Maurice definitely had an attitude and appeared to want to fight with appellant. However, none of the evidence shows that Maurice made any threats to appellant or that he had a weapon, or even that appellant believed he may have had a weapon.
 {¶ 34} With respect to appellant's argument that he proved that he should have only been convicted of aggravated assault, we disagree. As we stated previously, appellant did not submit any additional evidence beyond what appellee proffered. A review of the evidence reveals that appellant did not establish that he acted under the influence of sudden passion or a fit of rage, brought on by serious provocation, at least not that which was reasonably sufficient to incite him to use deadly force. At most, the evidence showed that Maurice wanted to fight appellant, which was clearly not reason to shoot him.
 {¶ 35} Further, we have already concluded that appellee presented sufficient evidence to sustain a felonious assault conviction. Thus, appellant's arguments lack merit.
 {¶ 36} Appellant also contends that the trial court's decision was against the manifest weight of the evidence.
 {¶ 37} In Schlee, supra, at 14-15, we explained that "`manifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 38} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' * * *" (Citations omitted.) (Emphasis sic.)
 {¶ 39} "When assessing witness credibility, `the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellant court may not substitute its own judgment for that of the finder of fact.'"State v. Brown, 11th Dist. No. 2004-T-0131, 2006-Ohio-129, at ¶ 40, quoting State v. Awan (1986), 22 Ohio St.3d 120, 123. "`Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it.'" Brown at ¶ 40, quoting Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, at 3. Finally, we note that a judgment of a trial court should only be reversed as being against the manifest weight of the evidence "`in the exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, supra, at 387.
 {¶ 40} With this standard in mind, we conclude that the conviction was not against the manifest weight of the evidence.
 {¶ 41} Again, appellee presented the testimony of Patterson, Investigator Airhart, Lieutenant Bishop, and appellant's written and videotaped statements. Patterson testified that she drove Maurice to the home on Tod Avenue, knowing that Maurice wanted to go there to find appellant. She saw something shiny, heard a gunshot, and Maurice returned to the car, stating that he had been shot. Appellant himself stated that he shot Maurice, firing his gun at least two times, and attempting to fire it a third, when it jammed. Lieutenant Bishop testified that Maurice was shot one time in the stomach, resulting in necessary surgery.
 {¶ 42} Again, appellant argues that he proved that he responded to a threat of violence and "acted instinctively protecting his person from harm[,]" essentially that he acted in self-defense, and that he proved at most that he should have only been convicted of the lesser "included" offense of aggravated assault.
 {¶ 43} Appellant's defense and requested instruction on aggravated assault were submitted to the jury, who found by special verdicts that appellant did not affirmatively prove by a preponderance of the evidence that he acted in self-defense or prove the mitigating circumstances of aggravated assault. Based on a review of the record, this court concludes that it was reasonable for the jury to have believed the testimony and evidence proffered by appellee.
 {¶ 44} As we stated in the foregoing analysis, appellant did not present any other evidence or witnesses in support of either argument. Thus, there is no conflict in the evidence that we need to resolve. In reviewing the record and weighing the evidence, we cannot say that the jury lost its way in believing appellee's version of the events and disbelieving appellant's. According to the evidence presented by appellee, appellant knowingly shot Maurice, firing the gun at him at least twice before it jammed, attempting to fire the gun a third time, and hitting him once in the stomach. Appellant does not dispute these facts. However, according to appellant, he shot Maurice because he feared for his life or serious bodily harm, he had no other way to retreat, and/or he was seriously provoked by a sudden fit of rage or passion. We conclude that the evidence in this case simply does not weigh heavily against the conviction, nor can we say that the jury clearly lost its way.
 {¶ 45} Hence, appellant's first assignment of error lacks merit.
 {¶ 46} In his second assignment, appellant contends that the trial court erred by not conducting a proper investigation into his claim of jury misconduct.
 {¶ 47} "A Crim.R. 33 motion for a new trial is addressed to the sound discretion of the trial court and will not be reversed save an abuse of discretion." State v. Schrock, 11th Dist. No. 2004-L-056, 2005-Ohio-4040, at ¶ 7, citing State v. Laveck,
11th Dist. Nos. 2002-L-189, 2003-L-122, 2005-Ohio-62. "The term abuse of discretion suggests more than an error of law; it implies the court's attitude was unreasonable, arbitrary, or unconscionable." Id.
 {¶ 48} Crim.R. 33(A)(2) provides in pertinent part that "[a] new trial may be granted * * * for any of the following causes affecting materially [the movant's] substantial rights: * * * misconduct of the jury, prosecuting attorney, or the witnesses for the state[.]" Under Crim.R. 33(B), motions seeking a new trial under Crim.R. 33(A)(2) must be filed within fourteen days after the verdict was rendered. Further, Crim.R. 33(E)(5) provides that "[n]o motion for a new trial shall be granted * * * unless it affirmatively appears from the record that the defendant was prejudiced thereby or was prevented from having a fair trial."
 {¶ 49} In State v. Jaryga, 11th Dist. No. 2003-L-023,2005-Ohio-352, at ¶ 72-75, this court stated:
 {¶ 50} "The Sixth Amendment to the United States Constitution mandates that `in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury(.)' Beyond this, the United States Supreme Court interpreted the Due Process Clause of the Fourteenth Amendment to the United States Constitution as requiring that a defendant accused of a state criminal violation be tried before a panel of fair and impartial jurors. Duncan v. Louisiana (1968), 391 U.S. 145
* * *. See, also, Section 10, Article I, Ohio Constitution, (establishing the right to `a speedy public trial by an impartial jury').
 {¶ 51} "The verdict reached by a jury in a criminal trial must be based solely on the evidence and argument presented in open court. State v. Taylor (1991), 73 Ohio App.3d 827, 831
* * *, citing Patterson v. Colorado (1907), 205 U.S. 454 * * *. Outside influences must not be permitted to affect the jury's decision.
 {¶ 52} "The Supreme Court of Ohio has held that a new trial may be granted for the misconduct of the jury when the substantial rights of the defendant have been materially affected. State v. Lewis (1993), 67 Ohio St.3d 200, 207 * * *;State v. Hipkins (1982), 69 Ohio St.2d 80, 83 * * *. See, also, Crim.R. 33; R.C. 2945.79. Jury misconduct will not warrant a new trial in the absence of prejudice to the defendant. `It is a long-standing rule (* * *) that we will not reverse a judgment because of the misconduct of a juror unless prejudice to the complaining party is shown.' (Citations omitted.) State v. Kehn
(1977), 50 Ohio St.2d 11, 19 * * *.
 {¶ 53} "Therefore, the analysis of a claim of jury misconduct requires a two-step inquiry. First, there must have been misconduct by a juror. Second, the court must determine whether such misconduct materially affected the substantial rights of the defendant. Taylor at 833. This court has previously held that, because the trial court is in the best position to determine the nature and extent of alleged jury misconduct, the trial court's decision on the scope of proceedings necessary to investigate the allegation is reviewed only for an abuse of discretion. State v.Sweitzer (July 14, 2000), 11th Dist. No. 98-T-0203, 2000 Ohio App. LEXIS 3204, at 12-13."
 {¶ 54} In the instant matter, appellant's allegations of juror misconduct stem from an incident that allegedly took place during the first break of jury deliberations on January 20, 2005. Appellant filed his motion for a new trial seven days later, on January 27, 2005. Attached to his motion was the affidavit of Yessheca McElroy ("McElroy"), dated January 20, 2005, and notarized the same day. It states in its entirety:
 {¶ 55} "4 jurors went outside at first break. I was standing behind the 4 jurors I said criminals like him is taking up my time she don't get paid for this and she don't appreciate it. It's taking up her time because we have to pay for the court cost, hospital bills, when people get shot. And another juror said she just don't like judging people. The young girl said you don't get paid for this I do."
 {¶ 56} Appellee argues that the motion was not filed timely. We disagree. Crim.R. 33(B) provides that motions for a new trial under Crim.R. 33(A)(2) must be filed within fourteen days after the verdict was rendered. Appellant filed his motion seven days after the verdict was rendered.
 {¶ 57} Appellant alleges that McElroy explicitly identified specific jurors who made the statements in her affidavit. He contends that "Juror number 4, said, `criminals like him is taking up my time, I didn't get paid for this and I don't appreciate it. It's taking up my time because we have to pay for the court costs, hospital bills, when people get shot. Ms. McElry [sic] also states she heard another juror, specifically Juror 5; say `I just don't like judging people.[']" However, it is clear that McElroy does not identify a single juror. In fact, it is not clear from the affidavit if McElroy is discussing jurors from appellant's trial or even that McElroy observed appellant's trial and recognized the jurors as being on appellant's case. Further, it is not even clear from the affidavit exactly how many jurors make comments.
 {¶ 58} Nevertheless, we must determine if the trial court abused its discretion by not investigating further to determine if there was misconduct. In doing so, we do not have to review two of the statements since they are innocuous: "another juror said she just don't like judging people" and "you don't get paid for this I do." The more problematic statements are: "criminals like him is taking up my time she don't get paid for this and she don't appreciate it" and "[i]t's taking up her time because we have to pay for the court cost, hospital bills, when people get shot."[2]
 {¶ 59} In its two-tier analysis, the trial court assumed everything in the affidavit was true and concluded first that, "[t]his [c]ourt is not convinced that [j]urors having a private conversation among themselves under the claimed circumstances reaches the point of [j]uror [m]isconduct. At the time of this alleged conversation, all of the evidence in this trial had been presented and there is no indication that improper extrinsic evidence had been brought to bear on any juror. Though it is not preferred for [j]urors to discuss a case outside the [j]ury [r]oom, this [c]ourt [f]inds that under these circumstances this [j]ury's actions did not reach the point of becoming [m]isconduct." Under the second tier, the trial court further concluded that "the [j]uror's [c]onduct viewed in the light most favorable to the [d]efendant, would not have materially affected the defendant's substantial rights."
 {¶ 60} After reviewing the record, we cannot conclude that the trial court abused its discretion when it determined that there was no misconduct without further investigation. Thus, appellant's second assignment of error lacks merit.
 {¶ 61} Accordingly, appellant's assignments of errors are without merit. The judgment of the Trumbull County Court of Common Pleas is affirmed.
William M. O'Neill, J., Cynthia Westcott Rice, J., concur.
[1] Although the trial court instructed the jury, with both parties agreeing, that aggravated assault is a lesser included offense of felonious assault, it is not. In State v. Hayes
(Sept. 30, 1999), 11th Dist. No. 97-A-0667, 1999 Ohio App. LEXIS 4645, at 9-10, we stated, "* * * aggravated assault is not a lesser included offense of felonious assault. State v. Deem
(1988), 40 Ohio St.3d 205, 210 * * *. Instead, the former is an inferior degree of the latter. Id. at 210-211. The Supreme Court of Ohio has explained that `an offense is an "inferior degree" of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements which will generally be presented in the defendant's case.' (Emphasis sic.) Id. at 209. * * * [T]he elements of aggravated assault are identical to those of the indicted offense of felonious assault except for the additional presence of one or both mitigating circumstances, to wit: sudden passion or a sudden fit of rage brought on by serious provocation occasioned by the victim." (Parallel citation omitted.) However, appellant does not raise this issue, and even if he did, we conclude that he was not prejudiced by this error.
[2] With respect to the two troublesome statements, it is not clear from the affidavit if they are made from the same juror or two different jurors.