OPINION
{¶ 1} Appellant, Thohunga J. Williams, appeals from the trial court's judgment of conviction, its judgment entry on sentence and the trial court's judgment entry labeling him a sexual predator. For the reasons outlined below, we affirm in part, reverse in part, and remand for resentencing.
 {¶ 2} On July 13, 2002, the victim, Loretta Davidson, approached appellant at Tony's Subway Inn, a bar in Painesville, Ohio. Ms. Davidson was interested in buying crack and believed appellant was a crack dealer. Appellant invited Ms. Davidson to follow him behind the bar near some railroad tracks. Once there, appellant told Ms. Davidson to remove her clothes and provide him oral sex, she complied with both requests. According to Ms. Davidson, appellant then attempted to engage in anal sex with her but she vehemently declined. Appellant told Ms. Davidson to roll over after which he laid upon Ms. Davidson and engaged in vaginal sex with her for between 10 and 15 minutes. Ms. Davidson stated, throughout the intercourse, she was pinned down under appellant's body weight. Ms. Davidson ultimately stated she did not wish to continue and demanded he get off of her. In response, appellant then struck her in the face and told her to get dressed. Appellant, however, took Ms. Davidson's undergarments and burned them. At trial, Ms. Davidson stated she generally complied with appellant's demands because she was scared; accordingly, she testified, she did not desire to have sex with appellant nor did she submit to appellant willingly.
 {¶ 3} After the episode, Ms. Davidson procured a ride home and related the facts of the incident to her friend Linda Kowalewski. According to Ms. Kowalewski, Ms. Davidson immediately stated she had been raped. Ms. Kowalewski testified that Ms. Davidson was scared and crying. Further, Ms. Kowalewski observed that Ms. Davidson was bleeding under her chin, her shirt was bloody, she had scratches on her back, and was not wearing her bra or underwear. An ambulance was subsequently called but, prior to its arrival, the two women smoked a small amount of crack Ms. Davidson obtained at the bar.
 {¶ 4} Officer Matthew Collins responded to a call for a sexual assault at 1:15 a.m. on July 13, 2002. Officer Collins encountered Ms. Davidson and observed she was "emotionally distressed" and possessed a cut under her chin. The officer spoke with Ms. Davidson who disclosed she had been raped at Tony's Subway Inn by a black male. While being transported to the hospital, Ms. Davidson disclosed similar information to Firefighter-Paramedic Robert Lapuh.
 {¶ 5} Officer Russell Tuttle was dispatched to Tony's Subway Inn to check for evidence behind the bar. Officer Tuttle recovered a burned bra and panties from the gravel next to the railroad tracks. He also noted an area where the grass had been matted down, as though something had been laying on it.
 {¶ 6} At the hospital, Dr. Carol Cunningham and Nurse Bonnie Fellows examined Ms. Davidson. Dr. Cunningham performed a physical exam, including a pelvic exam, and with the assistance of Nurse Fellows, performed a rape kit. Dr. Cunningham also sutured the laceration on Ms. Davidson's chin.
 {¶ 7} Officer Collins eventually obtained two statements from Ms. Davidson: one at the hospital on July 13, 2002 and one at the police station on July 15, 2002. Although the statements showed some inconsistencies, they were similar in the nature and character of the allegations.
 {¶ 8} Detective John Levicki was asked to assist in developing suspects in the rape investigation. He met with Ms. Davidson twice in the weeks following the attack. Detective Levicki provided Ms. Davidson with various photographic arrays; however, she was unable to identify anyone.
 {¶ 9} Dr. Stephen Labonne, the DNA technical manager for the Lake County Crime Lab, tested the items submitted from the alleged rape kit and found a complete male DNA type from sperm cells recovered on the rectal and vaginal swabs. At that point, there was no sample with which to compare the DNA found by Dr. Labonne. However, in October 2004, Detective Levicki obtained a search warrant to gather DNA from appellant. The detective collected cheek swabs from appellant and sealed them for testing. Dr. Labonne tested the cheek swabs and, after comparing them to the unknown suspect's DNA in Ms. Davidson's case, concluded that both samples belonged to appellant.
 {¶ 10} On March 8, 2005, appellant was indicted on the following charges: Count One, rape, a felony of the first degree in violation of R.C. 2907.02(A)(2); Count Two, kidnapping, a felony of the first degree in violation of R.C. 2905.01(A)(4); Count Three, sexual battery, a felony of the third degree in violation of R.C. 2907.03(A)(1); Count Four, felonious assault, a felony of the second degree in violation of R.C. 2903.11(A)(1); and Count Five, kidnapping, a felony of the first degree in violation of R.C. 2905.01(A)(3). A subsequent indictment was issued charging appellant with tampering with evidence, a felony of the third degree in violation of R.C. 2921.12(A)(1). On April 8, 2005, the trial court granted the state's motion to join the indictments thereby labeling the tampering with evidence charge as Count Six.
 {¶ 11} On May 12, 2005, appellant filed a motion to suppress the results of a DNA sample collected while he was in prison on an unrelated charge. The state duly responded on June 7, 2005. On June 15, 2005, the trial court issued a judgment entry denying appellant's motion.
 {¶ 12} A jury trial commenced on August 22, 2005 after which the jury returned verdicts of guilty on Counts One, Two, Three, Five, and Six; appellant was acquitted on Count Four. On August 26, 2005, appellant filed a motion for a mistrial and, on September 9, 2005, the state filed its response. On October 6, 2005, the trial court denied appellant's motion.
 {¶ 13} Prior to sentencing, the trial court held a H.B. 180 hearing after which appellant was adjudicated a sexual predator. Appellant was then sentenced to ten years imprisonment on Count One, which involved a mandatory term of imprisonment, and five years imprisonment on Count Six. The sentences were ordered to run consecutively to one another. The offenses in Counts Two, Three, and Five merged into Count One by operation of law.
 {¶ 14} Appellant now appeals and assigns ten errors for our review.
 {¶ 15} Appellant's first assignment of error asserts:
 {¶ 16} "The trial court erred to the prejudice of the appellant when it denied appellant's motion in limine."
 {¶ 17} "A motion in limine is tentative and precautionary in nature, reflecting the court's anticipatory treatment of an evidentiary issue at trial." Defiance v. Kretz (1991), 60 Ohio St.3d 1, 4. The denial of a motion in limine is within the sound discretion of the trial court.State v. Werfel, 11th Dist. Nos. 2002-L-101 and 2002-L-102,2003-Ohio-6958, at ¶ 64. Accordingly, we shall not disturb the trial court's ruling save an abuse of discretion. Id. An abuse of discretion connotes more than a mere error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 18} Under his first assignment of error, appellant argues the trial court abused its discretion in overruling his motion in limine which sought to exclude evidence of his alibi witness' nine year old conviction for child endangerment. According to appellant, the conviction had no bearing on the credibility, honesty or veracity of his witness.
 {¶ 19} Before discussing the specifics of appellant's argument, we must point out that defense counsel, on direct examination, inquired into Lawson's criminal history and requested her to explain the two convictions. In doing so, Lawson admitted to and discussed the nature of the convictions. In our view, this acted to "open the door" for the prosecution to cross-examine Lawson on the matter irrespective of the court's ruling on the motion in limine.
 {¶ 20} In State v. Earls (Mar. 19, 1993), 11th Dist. No. 92-L-054, 1993 Ohio App. LEXIS 1571, this court addressed a situation in which defense counsel moved the trial court to prevent the state from using the defendant's prior acts, including a conviction, for impeachment. The trial court overruled the motion. Subsequently, defense counsel raised the defendant's prior conviction at trial, apparently in a strategic attempt to ameliorate its effects. The defendant was ultimately convicted and, on appeal, alleged the trial court erred in overruling his motion in limine. This court held the trial court did not err because "[the trial court] has broad discretion in limiting any questioning of a witness on cross-examination to the name of the crime, time and place of conviction and the sentence imposed." Earls, at *14, citing, State v. Wright (1990), 48 Ohio St.3d 5, at syllabus. Notwithstanding this holding, this court further noted:
 {¶ 21} "We appreciate the tactical dilemma faced by appellant's attorney. Does one attempt to soften the evidence's impact by freely admitting it; or, does one wait until its introduction at trial and object, thus preserving the issue for appeal?
 {¶ 22} "In choosing to anticipate the issue by raising it on direct examination, appellant cannot now raise it here on appeal. * * *." Id. at *16.
 {¶ 23} In the instant matter, the discussion of Lawson's convictions went well beyond the name of the crime, time and place of the conviction, and the sentence. However, the substance of the testimony was elicited by defense counsel on direct examination. By attempting to soften the impact of the convictions by raising them on direct examination, the convictions became ripe for cross-examination.
 {¶ 24} Even had counsel not "opened the door" for appellee's cross-examination, we still believe the court did not abuse its discretion in overruling appellant's motion in limine. Evid.R. 609(A)(1) provides:
 {¶ 25} "Subject to Evid.R. 403, evidence that a witness other than the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the witness was convicted."
 {¶ 26} Evid.R. 403 provides:
 {¶ 27} "Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Undue Delay[.]
 {¶ 28} "(A) Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
 {¶ 29} "(B) Exclusion discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."
 {¶ 30} Here, appellant's alibi witness, Melissa Lawson, pleaded guilty to two counts of child endangering in 1996. According to the record, she received concurrent sentences of two to five years on each charge. Thus, under the pertinent evidentiary rules, the state could impeach Ms. Lawson on the nine year old convictions if the probative value was not substantially outweighed by the danger of unfair prejudice, et al.
 {¶ 31} While the convictions, in our view, appear to have little probative value regarding the credibility of Ms. Lawson's testimony, we do not believe the introduction of the conviction for purposes of impeachment prejudiced appellant's case. Prior to discussing Ms. Lawson's convictions, her credibility had been called into question. Specifically, she testified appellant was with her on the night in question. However, she subsequently admitted she and appellant were "friends with benefits," i.e. they "were friends but * * * also slept together." The statedirected the jury's attention to the potential personal conflicts inhering Ms. Lawson's testimony.
 {¶ 32} Evid.R. 609(A)(1) permits the introduction of felony convictions punishable by more than one year, such as the convictions in question. Here, we do not believe the possibility of prejudice issuing from the introduction of the evidence substantially outweighed its value as a tool for impeachment, the trial court did not abuse its discretion and thus, appellant's first assignment of error is overruled.
 {¶ 33} Appellant's second assignment of error states:
 {¶ 34} "The trial court violated the appellant's due process rights under the Ohio and Federal Constitution[s] when it denied his request for funds to obtain expert assistance."
 {¶ 35} Under this assignment of error, appellant specifically argues the trial court violated his due process rights by denying his request for funds to obtain an expert investigator and medical expert.
 {¶ 36} An indigent defendant is entitled to expert witnesses at the state's expense under certain conditions; to wit, "[a]s a matter of due process, indigent defendants are entitled to receive the `raw materials' and the `"basic tools of an adequate defense, * * *."' State v.Mason, 82 Ohio St.3d 144, 149, 1998-Ohio-370, quoting Ake v.Oklahoma (1985), 470 U.S. 68, 77.
 {¶ 37} Due process requires that funds be approved "only where the trial court finds, in the exercise of a sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert would result in an unfair trial."Mason, supra, at syllabus; see, also, State v. Freshwater, 11th Dist. No. 2002-L-041, 2004-Ohio-384, at ¶ 51.
 {¶ 38} From this, it follows that a defendant must demonstrate more than a mere possibility that an expert will provide assistance.State v. Evans, 153 Ohio App. 3d 226, 2003-Ohio-3475, at ¶ 14, citingState v. Campbell, 90 Ohio St.3d 320, 328, 2000-Ohio-183. "At a minimum, the indigent defendant must present the trial judge with sufficient facts which will demonstrate a particularized need for the expert requested." Evans, supra.
 {¶ 39} In his motion, appellant blankly asserted an investigator was "necessary" owing to the presence of contradictory evidence. The motion indicated that defense counsel could not conduct the investigation because it would necessarily place her in the role of both witness and attorney. Because this dual role is prohibited by DR 5-102, counsel would be unable to conduct the necessary investigation required for a proper defense.
 {¶ 40} Appellant further averred:
 {¶ 41} "a medical expert is necessary to properly evaluate the medical records and condition of the alleged victim. Depending on the evaluation of the medical records and the alleged victim[']s various reported psychological issues and prescription drug use and abuse this medical expert would then be an essential witness during the trial of this matter."
 {¶ 42} For these reasons, appellant concluded expert assistance was necessary and predicted that denying his request would create a risk of unfair and erroneous results.
 {¶ 43} With respect to appellant's request for funds to obtain an investigative expert, we agree with the trial court that he failed to set forth a particularized need adequate to sustain his request. Appellant asserts that there was "contradictory evidence" and thus an investigative expert was required. First, appellant does not elaborate on the nature of alleged contradictory evidence which, in his estimation, requires an investigator. Appellant's failure to assert particular evidence that would necessitate an investigator reveals the absence of a particularized need. Moreover, the existence of "contradictory evidence" in a criminal trial is neither unique nor remarkable. In criminal proceedings, the prosecution and the defense will seldom possess consistent viewpoints regarding the evidence and what it shows. In short, the nature of a criminal trial (and the adversarial legal system at large) is such that both sides will have differing, if not contradictory, theories premised upon evidence that each believe supports their position. Accordingly, the trial court did not abuse its discretion in denying appellant's request for an investigative expert.
 {¶ 44} Furthermore, appellant's request for a medical expert, while more particularized than his request for an investigator, does not clearly set forth a cognizable need. Although a medical expert would be capable of accurately evaluating the victim's medical records and the impact of the victim's medications, we do not see how this information would assist him in disproving any of the elements of the crimes he was accused of committing. Specifically, Dr. Carol Cunningham, the physician who treated the victim at the hospital on the night in question, testified on cross-examination that pelvic examinations and any attendant "rape kit" analysis cannot provide conclusive proof that a patient engaged in consensual or non-consensual sexual intercourse. Moreover, the jury heard evidence that the victim was on several medications which may or may not have encumbered her recollection of events at the time the crimes were reported; in our view, testimony from a medical expert would be largely cumulative and therefore unnecessary.
 {¶ 45} Further, the medical testimony that supported the state's allegations of "serious physical harm" was limited to the testimony of the victim. The victim stated that appellant struck her, she was cut and bleeding from the strike, and she received stitches for the cut which has resulted in a permanent scar. The state did not introduce a medical expert to substantiate the victim's testimony. Without such expert testimony, we fail to see how a medical expert was necessary for a constitutionally sufficient defense. Under the circumstances, appellant has failed to demonstrate her trial was unfair and also failed to show prejudice.
 {¶ 46} Based upon these observations, we hold appellant failed to make a particularized demonstration (1) of a reasonable probability that the requested experts would specifically aid his defense and (2) that the denial of the experts undermined the fairness of the trial. The trial court did not abuse its discretion in denying appellant funds to obtain the expert assistance sought. Appellant's second assignment of error is without merit.
 {¶ 47} Appellant's third assignment of error contends:
 {¶ 48} "The trial court violated appellant's due process rights under the Ohio and Federal Constitution(s) when it granted his request for funds to obtain [a] forensic expert, but did not authorize funds to be released."
 {¶ 49} Appellant's third assignment of error concerns his request for public payment of a forensic expert, which the trial court granted in part, but reserved ruling regarding the amount of payment because no specific expert had been named nor had a fee schedule been provided. In examining whether the court erred in failing to release the funds pursuant to his pretrial motion, we apply the same standard set forth under the previous assigned error. In this respect, appellant contends he was denied the "raw materials" and "basic tools of an adequate defense" when the trial court granted his motion to obtain a forensic expert but denied the release of a specific monetary amount until the prospective expert submitted his or her fee bill.
 {¶ 50} Appellant filed his motion to obtain an expert forensic analyst on August 8, 2005. On August 19, 2005, the trial court determined that appellant met his burden of showing a particularized need and granted the motion in part. The court stated:
 {¶ 51} "Defendant shall be permitted to obtain an expert; however, as no specific expert has been named, nor a specific amount of funds requested, the Court in its discretion, shall determine the appropriate level of compensation upon submission of the expert's fee bill."
 {¶ 52} The August 19, 2005 judgment entry clearly allowed appellant to retain an expert at the state's expense. Despite the trial court's determination, the record is bereft of any evidence indicating appellant sought out and retained a forensic expert. We do not believe the trial court has an obligation to afford a criminal defendant a "blank check" from the state's bank account to shop freely and loosely for an expert. Nor do we believe the court, after granting appellant's motion to obtain an expert, was obligated to perform a search and/or provide a name of a forensic expert to suit appellant's purported needs. Appellant's argument implies the court was required to afford appellant one or both of these luxuries. The judgment entry is clear: appellant was free to retain the "raw materials" and/or "basic tools" he argues were necessary to secure an adequate defense. Such was the nature of his obligation in light of the court's determination.
 {¶ 53} Further, although appellant asserts in his brief the court
failed to continue the trial, a review of the record does not reveal that appellant moved the court for a continuance. Without filing such a motion or addressing his concerns with the court prior to trial, any problems issuing from appellant's failure to retain an expert in light of the court's ruling rest firmly upon appellant's shoulders and cannot be imputed to the trial court. Appellant's third assignment of error is overruled.
 {¶ 54} Appellant's fourth assignment or error states:
 {¶ 55} "The trial court erred to the prejudice of the appellant when it denied the appellant's motion for mistrial."
 {¶ 56} Appellant's fourth assignment of error contains a substantially similar argument as that alleged under his third assignment of error. To wit, appellant argues the trial court erred in denying his motion for mistrial (construed as a motion for a new trial) because the trial court's failure to release funds for a forensic expert denied him a substantial right to a fair trial.
 {¶ 57} After the trial concluded, appellant moved the court for a mistrial on October 6, 2006. The trial court construed this motion as a motion for new trial pursuant to Crim.R. 33 and, after consideration, denied the same. In reviewing a motion for a new trial, Crim.R. 33(A)(1) provides:
 {¶ 58} "(A) A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 {¶ 59} "(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial."
 {¶ 60} The decision to grant or deny a new trial rests within the court's sound discretion. State v. Jordan, 11th Dist. No. 2005-T-0049,2006-Ohio-3425, at ¶ 47. The decision to grant a new trial is an extraordinary measure and should be used only when the evidence presented weighs heavily in favor of the moving party. State v.Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 61} We hold, for the reasons already articulated under appellant's third assignment of error, the trial court did not abuse its discretion in denying appellant's motion. The evidence did not weigh heavily in appellant's favor nor was there any indication a different result would have been reached had he pursued and retained an expert forensic analyst. Appellant's fourth assignment of error lacks merit.
 {¶ 62} Appellant's fifth assignment of error reads:
 {¶ 63} "The trial court erred to the prejudice of the appellant when it prevented the appellant from presenting impeachment evidence during cross examination of the state's DNA expert."
 {¶ 64} Under this assignment of error, appellant asserts the trial court abused its discretion when it prevented him from offering evidence that the state's DNA expert was reprimanded for unprofessional conduct in a separate rape investigation.
 {¶ 65} After reviewing the record, we can find no basis for appellant's contention that the trial court specifically prevented him from offering the evidence at issue. That is, there is nothing in the record to indicate defense counsel sought to impeach Dr. Labonne with the reprimand in question. That said, after close of all the evidence, defense counsel did proffer the evidence.
 {¶ 66} Typically, the evidence would be properly proffered if defense counsel attempted to impeach Dr. Labonne with the evidence, the state objected to the use of the evidence, and the court sustained the objection. After sustaining the objection, defense counsel would seek to proffer the evidence in order to preserve its content for the record. Here, cross-examination occurred without an attempt to impeach using the proffered document. As such, there was never an opportunity for the state to object nor an opportunity for the court to sustain or overrule the objection. Therefore, we cannot say the court acted unreasonably in failing to overrule an objection that never occurred on record.
 {¶ 67} However, even assuming the record reflected a ruling by the court excluding the document, we would still conclude no abuse of discretion occurred. After reviewing the content of the document, it appears the reprimand was a result of certain unprofessional remarks Dr. Labonne cast at police officers who were submitting evidence to the Lake County Crime Laboratory. The substance of the remarks essentially challenged the police officers' abilities to gather evidence in a separate, unrelated rape case which had occurred in Painesville, Ohio. The reprimand did not pertain to the case at bar and, more importantly, neither challenged Dr. Labonne's professional skills as an independent DNA analyst nor the scientific value of his reports. In our view, the letter of reprimand had no impact on his credibility as a forensic analyst and therefore, even had the trial court excluded the report during the course of cross-examination, we believe it would not have abused its discretion. Appellant's fifth assignment of error is overruled.
 {¶ 68} Appellant's sixth assignment of error contends:
 {¶ 69} "The trial court erred to the prejudice of the appellant when it sentenced the appellant to more than the `statutory maximum' sentence based upon a finding of factors not found by the jury or admitted by the appellant in violation of appellant's state and federal constitutional rights to trial by jury."
 {¶ 70} Under his sixth assignment of error, appellant contends the trial court erred in sentencing him to serve maximum and consecutive sentences based upon findings neither made by the jury nor admitted by the defendant. See, Blakely v.Washington (2004), 542 U.S. 296.
 {¶ 71} Appellant was convicted of rape, a felony of the first degree, two counts of kidnapping, each felonies of the first degree, sexual battery, a felony of the third degree, and tampering with evidence, a felony of the third degree. At the sentencing hearing, the trial court sentenced appellant to the maximum ten years imprisonment on the rape count[1] and the maximum five years imprisonment on the tampering with evidence count. These sentences were ordered to be served consecutively to one another. The two kidnapping offenses and the sexual battery offense merged with the rape count by operation of R.C. 2941.24(A).
 {¶ 72} As Ohio's felony sentencing scheme existed at the time of appellant's sentencing, a trial court could only impose maximum sentences and consecutive terms if it found certain factors set forth in R.C. 2929.14(C) and R.C. 2929.14(E)(4); in conjunction with these respective findings, a trial court was also obligated to supply reasons in support of these findings pursuant to R.C. 2929.19(B)(2)(c) and R.C.2929.19(B)(2)(d).
 {¶ 73} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Ohio Supreme Court held R.C. 2929.14(C), 2929.14(E)(4), and R.C.2929.19(B)(2) unconstitutional and severed them from Ohio law. Id. at paragraphs one, two, three and four of the syllabus.
 {¶ 74} In the instant case, the trial court engaged in the formerly required, but now unconstitutional, exercise of judicial factfinding under R.C. 2929.14(C), R.C. 2929.14(E)(4), and R.C. 2929.19(B)(2). As a result, appellant's sentences are unconstitutional underFoster. On remand, the trial court is no longer required to make findings or give its reasons for imposing the maximum sentence or consecutive sentences. Id. at paragraph seven of the syllabus. "Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range." Id. at ¶ 105. The discretion belongs to the trial court. Appellant's sixth assignment of error is well-taken.
 {¶ 75} Appellant's seventh assignment of error asserts:
 {¶ 76} "The trial court erred to the prejudice of the appellant when it introduced the report of the court psychologist without testimony."
 {¶ 77} Under his seventh assignment of error, appellant argues that the admission of the court psychologist's report into evidence at the sexual predator hearing, violated his rights under the Confrontation Clause of the Sixth Amendment. Appellant essentially argues the psychological report was inadmissible hearsay evidence admitted in violation of his constitutional right to due process.
 {¶ 78} The Sixth Amendment provides that "[i]n all criminal
prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." U.S. Const. Amend. VI. (Emphasis added). A sexual predator classification hearing, however, is a civil proceeding, not a criminal prosecution. State v. Taylor, 11th Dist. No. 2002-G-2441, 2003-Ohio-6963, at ¶ 26. As a sexual predator hearing is civil in nature, appellant is not entitled to the same confrontation rights he is afforded under the Sixth Amendment. State v. Hayden,96 Ohio St.3d 211, 2002-Ohio-4169, at ¶ 4. Thus, any admission of hearsay evidence did not violate appellant's right to confrontation of witnesses. Appellant's seventhassignment of error lacks merit.
 {¶ 79} The eighth assignment of error alleges:
 {¶ 80} "Appellant's convictions are against the manifest weight of the evidence."
 {¶ 81} When reviewing a challenge to a criminal conviction based upon the weight of the evidence, an appellate court reviews:
 {¶ 82} "`the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"State v. Newton (June 27, 1997), 11th Dist. No. 96-L-058, 1997 Ohio App. LEXIS 2802, 14, citing, State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 83} While a reviewing court engages in a limited weighing of the evidence, it must defer to the factual findings of the jury regarding the credibility of witnesses and the weight their testimony carries.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 84} Appellant argues that the victim's testimony was inadequate to establish the elements of the various crimes for which he was convicted. Appellant specifically contends the victim's testimony was insufficient to establish he compelled her to submit by force or threat to sexual conduct. We disagree.
 {¶ 85} After merger, appellant was essentially convicted of two offenses: rape and tampering with evidence.[2]
 {¶ 86} Appellant was convicted of rape in violation of R.C.2907.02(A)(2), which provides: "[n]o person shall engage in sexual conduct with another person when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 87} Appellant was also convicted of tampering with evidence in violation of R.C. 2921.12(A)(1), which reads:
 {¶ 88} "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted shall do any of the following:
 {¶ 89} "(1) Alter, destroy, conceal, or remove any record, document, or thing with purpose to impair its value or availability as evidence in such proceeding or investigation."
 {¶ 90} Here, the victim testified she asked appellant for crack; he initially declined but invited her behind the bar with him. She followed and once they reached the railroad tracks, appellant demanded she disrobe; although the victim obliged, she testified she was scared and "didn't know what he was going to do to [her]." The victim stated she performed oral sex upon appellant. Shortly thereafter appellant advised the victim "he wanted to do rectal." The victim responded in the negative. However, according to the victim, appellant told the victim to "get down," the victim complied and appellant proceeded to have vaginal intercourse with the victim. The victim testified she demanded appellant "get off" of her. However, she was unable to move because appellant was on top of her. During the episode, the victim testified appellant struck her on the chin causing a laceration requiring stitches. Appellant warned the victim "that if [she] told anybody he would kill [her]." Appellant proceeded to burn her bra and panties.
 {¶ 91} After the victim was taken to the hospital, Dr. Carol Cunningham performed a physical examination and a rape kit. Dr. Cunningham diagnosed the victim with a closed head injury (i.e., a concussion) and a chin laceration. From the evidence gathered from the alleged rape kit, Dr. Stephen Labonne was able to identify appellant's DNA.
 {¶ 92} Although defense counsel did a fine job addressing certain inconsistencies in the victim's several statements to authorities, we do not believe these inconsistencies rendered appellant's rendition of the facts so incredible as to be unbelievable. Given the totality of the evidence, we believe the state carried its burden of persuasion. There was sufficient, probative evidence demonstrating appellant purposely compelled the victim by force to submit to sexual intercourse. Likewise, the evidence was such that a reasonable jury could conclude, beyond a reasonable doubt, that appellant burnt the victim's undergarments and therefore knowingly destroyed evidence likely to be used in a criminal investigation. Accordingly, we hold the jury did not clearly lose its way nor do the convictions reflect a manifest miscarriage of justice. Therefore, appellant's eighth assignment of error lacks merit.
 {¶ 93} Appellant's ninth assignment of error states:
 {¶ 94} "The evidence was insufficient to sustain the finding that appellant was a sexual predator."
 {¶ 95} A "sexual predator" is defined as:
 {¶ 96} " * * * [A] person [who] has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E)(1).
 {¶ 97} R.C. 2950.09(B)(4) requires clear and convincing evidence in the record before a trial court can adjudicate a defendant a sexual predator. The trial court is also required to consider the factors under R.C. 2950.09(B)(3)(a) through (j) to determine whether a defendant is likely to commit another sexually-oriented offense in the future.[3]State v. Reed, 10th Dist. No. 02AP-694, 2003-Ohio-2412, at ¶ 52.
 {¶ 98} The trial court must consider the factors set forth in R.C.2950.09(B)(3). However, the court is not required to "tally up" these factors in a particular fashion. State v. Clutter (Jan. 28, 2000), 4th Dist. No. 99CA19, 2000 Ohio App. LEXIS 371, *7. "A court may classify an offender as a `sexual predator' even if only one or two statutory factors are present, so long as the totality of the relevant circumstances provide clear and convincing evidence that the offender is likely to commit a future sexually-oriented offense." Id., citingState v. Mollohan (Aug. 20, 1999), 4th Dist. No. 98CA13, 1999 Ohio App. LEXIS 3980.
 {¶ 99} Here, the court considered all relevant factors under R.C.2950.09(B)(3). Of those considerations, several were particularly germane to the court's conclusion. To wit, the court observed appellant had a prior criminal record, including convictions for violence as a juvenile and the nature of appellant's actions during the commission of the rape displayed cruelty or threats of cruelty. Moreover, the court stated: "[additional] characteristics that contributed to the defendant's conduct include the fact that the psychological evaluation of Dr. Rindsberg indicates that the defendant is a moderate-high risk to re-offend and that sexual predator is an appropriate label for the defendant."[4] After observing the evidence in its entirety, we believe there was clear and convincing evidence in support of the court's conclusion. We will therefore not disturb its determination. Appellant's ninth assignment of error lacks merit.
 {¶ 100} Appellant's tenth and final assignment of error alleges:
 {¶ 101} "The trial court erred to the prejudice of the appellant when it denied appellant's motion to suppress."
 {¶ 102} When considering an appeal of a trial court's ruling on a motion to suppress, an appellate court reviews the trial court's application of law de novo. State v. Weiss, 11th Dist. No. 2004-L-090,2005-Ohio-6704, at ¶ 16.
 {¶ 103} Appellant contends R.C. 2901.07, the statute authorizing routine collection of DNA samples from prison inmates, is unconstitutional because it violates an inmate's right to be free from unreasonable searches and seizures.[5] We disagree.
 {¶ 104} The Fourth and Fourteenth Amendments to the Constitution of the United States and Section 14, Article I, of the Ohio Constitution, prohibit any governmental search or seizure unless supported by objective justification. State v. Andrews (1991), 57 Ohio St.3d 86, 87. Compulsory extractions of blood qualify as searches under theFourth Amendment. State v. ex rel. Ohio AFL-CIO v. Ohio Bur. Of Workers'Comp., 97 Ohio St.3d 504, 508, 2002-Ohio-6717, see, also, Skinner v. Ry.Labor Executives' Ass'n (1989), 489 U.S. 602, 616. A search will be considered unconstitutional under the Fourth Amendment only where it is deemed unreasonable.
 {¶ 105} "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell v. Wolfish (1979), 441 U.S. 520, 559.
 {¶ 106} Typically, a valid search necessitates a warrant, probable cause, or, at the very least, reasonable suspicion. However, in narrow circumstances, where individual privacy interests are minimal and concomitant governmental interests heightened, a search may be reasonable despite the absence of probable cause or reasonable suspicion. State ex rel. Ohio AFL-CIO, supra, at 509; see, also,Skinner, supra, at 624.
 {¶ 107} In cases analyzing DNA collection statutes such as R.C.2901.07, courts have utilized two distinct theories to dispense with the common requirements of probable cause or individualized suspicion, i.e. the "special-needs" doctrine and the traditional "totality-of-the-circumstances" test. See, State v. Cremeans,160 Ohio App.3d 1, 6-10, 2005-Ohio-928; see, also, State v. Steele,155 Ohio App.3d 659, 668, 2003-Ohio-7103. The "special-needs" doctrine permits a search without a warrant or individualized suspicion when the primary purpose of the search transcends the ordinary ends of law enforcement, e.g., the search is not designed for gathering evidence towards the end of an imminent prosecution. Cremeans, supra. Alternatively, the "totality-of-the-circumstances" test does not focus on the purpose of the search but balances the competing interests of the parties involved. Id. at 9.[6]
 {¶ 108} In Cremeans, the Second Appellate District engaged in a lengthy analysis of both theories and held R.C. 2901.07 constitutional pursuant to the traditional totality-of-the-circumstances approach. The court indicated its holding did not "preclude the possibility that [R.C.2901.07] might survive scrutiny under the special-needs doctrine." Id. at 13. However, the Cremeans court stated it preferred the totality-of-the-circumstances approach because it comports more clearly with the traditional analysis prescribed by the Fourth Amendment. Id. supra, at 13. However, the court stated:
 {¶ 109} "* * * regardless of whether we interpret R.C. 2901.07 as serving some special need distinct from ordinary law enforcement, as the trial court did, or whether we perceive the statute as furthering a traditional law enforcement objective, the conclusion is the same: the compelled extraction of Cremeans' blood or saliva for DNA analysis does not violate his Fourth Amendment rights. Under the special-needs approach, a key consideration in the Fourth Amendment balancing of interests is finding that the DNA analysis is being conducted primarily for non-law enforcement purposes. On the other hand, under the pure totality-of-the-circumstances approach that we favor, an inmate's reduced expectation of privacy is a paramount consideration when balancing competing interests to find the DNA testing reasonable under the Fourth Amendment.
 {¶ 110} "As one appellate court astutely has observed, however, `regardless of which analytic approach we follow, we see a common thread that leads to the conclusion the Fourth Amendment is not offended by the statute. Incarcerated felons have a substantially diminished expectation of privacy. The testing, by needle or swab, is minimally intrusive. The State is not investigating a particular or specific crime. It is conducting a technologically accurate identification procedure that will enhance the administration of justice — reaching back to solve past crimes and extending forward to identify future offenders, convicting the guilty and acquitting the innocent.' [People v. Peppers (2004), 817 N.E.2d 1152, 1157]" Cremeans, supra, at 13.
 {¶ 111} We agree with the Second Appellate District in that we do not believe a court must perform a two-tiered analysis incorporating both the special needs doctrine and the totality-of-the-circumstances test. If the statute passes constitutional muster under either of these analyses, it is valid and the inquiry may cease. That said, coincidentally, we believe, like the courts in both Steele andCremeans, the statute passes either test. With respect to the special-needs doctrine, we hold that R.C. 2901.07 is not designed to discover evidence of a specific party's criminal conduct. DNA provides evidence only of an inmate's genetic code, which does not, by itself, demonstrate commission of a crime. That is, "[t]he samples are maintained in the database without reference to the individual, and only a small percentage of the DNA samples are ever linked to any specific crime." Steele, supra, at *671. Accordingly, it is difficult to conclude the DNA database exists for the primary purpose of producing direct evidence of criminal conduct whose prosecution is imminent and/or foreseeable.
 {¶ 112} Further, a prisoner possesses a significantly constricted expectation of privacy vis-à-vis the general public. This lower expectation of privacy in conjunction with the government's strong interest in creating a database of genetic "fingerprints" is sufficient to sustain DNA collection even in the absence of some non-law enforcement special needs. See, United States v. Kincade (9th Cir. 2004), 379 F.3d 813, 834-835. For the foregoing reasons, the trial court did not err in overruling his motion to suppress the DNA results which were procured under the authority of R.C. 2901.07. Appellant's tenth assignment of error lacks merit.
 {¶ 113} For the reasons set forth above, appellant's first, second, third, fourth, fifth, seventh, eighth, ninth, and tenth assignments of error are overruled. Appellant's sixth assignment of error, however, is sustained. Thus, the judgment of the Lake County Court of Common Pleas is reversed and the matter remanded for resentencing.
DIANE V. GRENDELL, J., concurs,
WILLIAM M. O'NEILL, J., dissents with Dissenting Opinion.
[1] Pursuant to R.C. 2929.13(F)(2), a term of imprisonment is mandatory for a conviction of rape. Although a court is required to impose a prison term, we believe the statutory scheme under S.B. 2 would permit the imposition of the maximum term if the court followed the dictates of R.C. 2929.14(C). Accordingly, a sentence of imprisonment on a rape conviction, while mandatory, is still subject to the mandates ofFoster where, as here, the court engaged in prohibited judicial factfinding.
[2] Although appellant was only acquitted on the felonious assault charge, the remaining two kidnapping counts and sexual battery count merged with the rape conviction. R.C. 2941.24(A), the statute governing merger of multiple counts, provides: "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."
[3] The R.C. 2950.09(B)(3) factors are: the offender's age; the offender's prior criminal record; the victim's age; whether the offense involved multiple victims; whether the offender used drugs or alcohol to impair the victim of the offense or to prevent the victim from resisting; if the offender has previously been convicted of or pled guilty to a criminal offense, whether the offender completed the sentence imposed and, if the prior offense was a sex offense, whether the offender participated in programs available for sex offenders; any mental illness or mental disability of the offender; the nature of the sexual conduct with the victim and whether it was part of a demonstrated pattern of abuse; whether, during the commission of the offense, the offender displayed cruelty or made one or more threats of cruelty; and any additional behavioral characteristics that contribute to the offender's conduct. Id.
[4] It bears noting that Dr. Rindsberg's report assessment concludes that, if the allegations of the victim were true, appellant is at a "high" risk to recidivate.
[5] On November 23, 2003, appellant was subjected to a DNA collection pursuant to R.C. 2901.07 while incarcerated for an unrelated offence. This collection was preserved in the state's database. On November 3, 2004, Detective Levicki obtained a swab of appellant's DNA pursuant to a search warrant. It would seem the 2004 collection would suffice to connect appellant to the crime in question and, if so, the 2003 collection would be inconsequential; in effect, any concern arising from that collection would be moot. Nevertheless, assuming the 2003 sample was somehow used in the instant investigation, we shall address the merits of appellant's contention.
[6] In Steele, supra, the First Appellate District held both the "special needs" doctrine and the "totality-of-the-circumstances" test should be applied as part of a two-tiered inquiry into the constitutionality of Ohio's DNA collection statute. According toSteele, a court must first determine whether the statute serves a non-law enforcement purpose. If the statute passes this test, a court moves forward with a balancing of the parties' respective interests. Id. at *669. However, in Cremeans, the court set forth a litany of authority indicating these analyses are separate and sufficient unto themselves. The court noted that "numerous courts have reviewed DNA statutes * * * under a pure totality-of-the circumstances or balancing test without regard to any `special needs' of the government. We find nothing * * * to preclude such an approach." Id. at f.n. 4.