OPINION
{¶ 1} In this consolidated appeal, appellant, Thohunga J. Williams, has filed a timely appeal from the judgment entry of the Lake County Court of Common Pleas in which he was re-sentenced, pursuant toState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, to fifteen years imprisonment. For the reasons below, we affirm.
 {¶ 2} On July 13, 2002, the victim, Loretta Davidson, approached appellant at Tony's Subway Inn, a bar in Painesville, Ohio. Ms. Davidson was interested in buying crack cocaine and approached appellant who she believed was a crack dealer. *Page 2 
Appellant invited Ms. Davidson to follow him behind the bar near some railroad tracks. Once there, appellant told Ms. Davidson to remove her clothes and provide him oral sex. She complied with both requests. According to Ms. Davidson, appellant then attempted to engage in anal sex with her but she vehemently declined. Appellant told Ms. Davidson to roll over after which he laid upon her and engaged in vaginal sex with her for between 10 and 15 minutes. Ms. Davidson stated, throughout the intercourse, she was pinned down under appellant's body weight. Ms. Davidson ultimately stated she did not wish to continue and demanded he get off of her. In response, appellant then struck her in the face and told her to get dressed. Appellant, however, took Ms. Davidson's undergarments and burned them. At trial, Ms. Davidson stated she generally complied with appellant's demands because she was scared; accordingly, she testified, she did not desire to have sex with appellant nor did she submit to appellant willingly.
 {¶ 3} After the episode, Ms. Davidson procured a ride home and related the facts of the incident to her friend Linda Kowalewski. According to Ms. Kowalewski, Ms. Davidson immediately stated she had been raped. Ms. Kowalewski testified that Ms. Davidson was scared and crying. Further, Ms. Kowalewski observed that Ms. Davidson was bleeding under her chin, her shirt was bloody, she had scratches on her back, and was not wearing her bra or underwear. An ambulance was subsequently called but, prior to its arrival, the two women smoked a small amount of crack Ms. Davidson had obtained at the bar.
 {¶ 4} Officer Matthew Collins responded to a call for a sexual assault at 1:15 a.m. on July 13, 2002. Officer Collins encountered Ms. Davidson and observed she *Page 3 
was "emotionally distressed" and had a cut under her chin. The officer spoke with Ms. Davidson, who disclosed she had been raped at Tony's Subway Inn by a black male. While being transported to the hospital, Ms. Davidson disclosed similar information to Firefighter-Paramedic Robert Lapuh.
 {¶ 5} Officer Russell Tuttle was dispatched to Tony's Subway Inn to check for evidence behind the bar. Officer Tuttle recovered a burned bra and panties from the gravel next to the railroad tracks. He also noted an area where the grass had been matted down, as though something had been laying on it.
 {¶ 6} At the hospital, Dr. Carol Cunningham and Nurse Bonnie Fellows examined Ms. Davidson. Dr. Cunningham performed a physical exam, including a pelvic exam, and with the assistance of Nurse Fellows, performed a rape kit. Dr. Cunningham also sutured the laceration on Ms. Davidson's chin.
 {¶ 7} Officer Collins eventually obtained two statements from Ms. Davidson: one at the hospital on July 13, 2002 and one at the police station on July 15, 2002. Although the statements showed some inconsistencies, they were similar in the nature and character of the allegations.
 {¶ 8} Detective John Levicki was asked to assist in developing suspects in the rape investigation. He met with Ms. Davidson twice in the weeks following the attack. Detective Levicki provided Ms. Davidson with various photographic arrays; however, she was unable to identify anyone.
 {¶ 9} Dr. Stephen Labonne, the DNA technical manager for the Lake County Crime Lab, tested the items submitted from the alleged rape kit and found a complete male DNA type from sperm cells recovered on the rectal and vaginal swabs. At that *Page 4 
point there was no sample with which to compare the DNA found by Dr. Labonne. However, in October, 2004, Detective Levicki obtained a search warrant to gather DNA from appellant. The detective collected cheek swabs from appellant and sealed them for testing. Dr. Labonne tested the cheek swabs and, after comparing them to the unknown suspect's DNA in Ms. Davidson's case, concluded that both samples belonged to appellant.
 {¶ 10} On March 8, 2005, appellant was indicted on the following charges: Count One, rape, a felony of the first degree in violation of R.C. 2907.02(A)(2); Count Two, kidnapping, a felony of the first degree in violation of R.C. 2905.01(A)(4); Count Three, sexual battery, a felony of the third degree in violation of R.C. 2907.03(A)(1); Count Four, felonious assault, a felony of the second degree in violation of R.C. 2903.11(A)(1); and Count Five, kidnapping, a felony of the first degree in violation of R.C. 2905.01(A)(3). A subsequent indictment was issued charging appellant with tampering with evidence, a felony of the third degree in violation of R.C. 2921.12(A)(1). On April 8, 2005, the trial court granted the state's motion to join the indictments thereby labeling the tampering with evidence charge as Count Six.
 {¶ 11} A jury trial commenced on August 22, 2005, after which the jury returned verdicts of guilty on Count One, Two, Three, Five, and Six; appellant was acquitted on Count Four. On August 26, 2005, appellant filed a motion for a mistrial and, on September 9, 2005, the state filed its response. On October 6, 2005, the trial court denied appellant's motion.
 {¶ 12} Prior to sentencing, the trial court held an H.B. 180 hearing after which appellant was adjudicated a sexual predator. Appellant was then sentenced to ten *Page 5 
years imprisonment on Count One, which involved a mandatory term of imprisonment, and five years imprisonment on Count Six. The sentences were ordered to run consecutively to one another. The offenses in Counts Two, Three, and Five merged into Count One by operation of law.
 {¶ 13} In State v. Williams, 11th Dist. Nos. 2005-L-213 and 2005-L-214, 2007-Ohio-212, this court affirmed appellant's convictions, but remanded the matter to the trial court for resentencing pursuant toFoster, supra. Prior to the resentencing hearing, appellant filed various motions including a sentencing jury demand; a motion to strike or disallow victim impact statement; a motion for order correcting the record or, in the alternative, for an evidentiary hearing; a motion for public payment of expert to complete psychiatric evaluation for purposes of HB 180 hearing and for resentencing; a motion for order of funds to obtain expert DNA forensics analysis at state's expense for resentencing and sexual predator evaluation; a motion for order for funds to obtain expert for forensic sociologist at state's expense for resentencing and sexual predator hearing; and a motion to order discovery schedule for sexual predator evaluation. The trial court overruled each motion. After conducting a new sentencing hearing, the trial court imposed the same sentence.
 {¶ 14} Subsequent to the court's sentencing pronouncement, appellant's trial counsel made the following proffer relating to appellant's "motion for an order correcting the record or, in the alternative for evidentiary hearing:"
 {¶ 15} "* * * in August of 2005 * * * I was advised by a member of the [trial] [c]ourt staff approximately 3:45 p.m. on Thursday, August 18, 2005, before the Monday August 22nd, 2005 trial that the [c]ourt allowed expert assistance in the area of DNA forensic *Page 6 
evidence but would not grant a continuance of the trial date. And that I was advised that there would be no continuance and that I could have a DNA expert to assist for the trial but that I was not going to be granted a continuance to obtain the assistance, that I would have to obtain it and then that DNA expert would have to submit their bill to the [c]ourt and get paid like everyone else but that I was not going to be granted a continuance for purposes of securing DNA expert assistance. * * *"
 {¶ 16} The hearing concluded and appellant filed a timely notice of appeal. He now raises three assignments of error for our review.
 {¶ 17} Appellant's first assignment of error reads:
 {¶ 18} "The trial court erred to the prejudice of the appellant when it effectively denied the opportunity to acquire and present defense DNA evidence."
 {¶ 19} Appellant raises three issues under his first assigned error. Each issue is oriented around certain of the trial court's rulings, which occurred prior to trial, pertaining to his request for public payment for a forensic expert. Specifically, before trial commenced, the trial court granted this request in part, but reserved ruling as to the amount of payment because appellant had named no specific expert at the time and no fee schedule had been submitted. This order occurred on a Thursday and trial was scheduled to commence the following Monday. During his resentencing hearing, appellant's counsel made the above quoted proffer. In light of this proffer, appellant now argues the trial court's pre-trial ruling effectively deprived him of an expert in violation of his due process rights, his right to confrontation, and his right to compulsory process of witnesses. *Page 7 
 {¶ 20} Initially, we point out that appellant's post-trial proffer at resentencing suggests that proclamations from court personnel regarding a judge's willingness or disinclination to grant a motion are entitled to some particular deference. They are not. In order to ensure an issue is properly entertained, counsel was obligated to request the judge to continue the upcoming trial via formal motion. The lack of a forensic expert and the ensuing alleged violations of due process were therefore not occasioned by any act or omission by the trial court. The record indicates the trial went forward as scheduled without any indication that appellant's defense was either underprepared or at a disadvantage.
 {¶ 21} However, there is a more fundamental problem with appellant's arguments. To wit, because these issues either were addressed or could have been addressed in Williams I, they are now barred by operation of the doctrine of res judicata.
 {¶ 22} Pursuant to the doctrine of res judicata, "a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." State v. Szefcyk, 77 Ohio St.3d 93, at syllabus,1996-Ohio-337, (State v. Perry (1967), 10 Ohio St.2d 175, at paragraph nine of the syllabus, approved and followed.)
 {¶ 23} In Williams I, appellant argued the trial court denied his due process rights when it granted the request for funds to obtain a forensic expert, but did not authorize the funds to be released. Id. at ¶ 48. In overruling appellant's argument, this court held: *Page 8 
 {¶ 24} "the record is bereft of any evidence indicating appellant sought out and retained a forensic expert. We do not believe the trial court has an obligation to afford a criminal defendant a `blank check' from the state's bank account to shop freely and loosely for an expert. Nor do we believe the court, after granting appellant's motion to obtain an expert was obligated to perform a search and/or provide a name of a forensic expert to suit appellant's purported needs. * * * The [trial court's] judgment entry is clear: appellant was free to retain the `raw materials' and/or `basic tools' he argues were necessary to secure an adequate defense. Such was the nature of his obligation in light of the court's determination." Id. at ¶ 52.
 {¶ 25} This court further held:
 {¶ 26} "[Although appellant asserts in his brief the court failed to continue the trial, a review of the record does not reveal that appellant moved the court for a continuance. Without filing such a motion or addressing his concerns with the court prior to trial, any problems issuing from appellant's failure to retain an expert in light of the court's ruling rest firmly upon appellant's shoulders and cannot be imputed to the trial court." (Emphasis sic). Id. at ¶ 53.
 {¶ 27} Although defense counsel's proffer indicates she was told by a member of the trial court's staff that the court would not grant a continuance, our opinion in Williams I demonstrates that appellant did not formally move the court for a continuance. With no motion to rule upon, the court had no obligation to act. Each of the due process issues raised in this appeal are necessarily connected to appellant's failure to seek a continuance before trial; as a result, the deprivations appellant now alleges he suffered either were addressed or could have been addressed in Williams I. Appellant is *Page 9 
therefore precluded, by operation of res judicata, from raising these issues at this stage.[1]
 {¶ 28} Appellant's first assignment of error is overruled.
 {¶ 29} Appellant's second assignment of error contends:
 {¶ 30} "The trial court erred to the prejudice of appellant when it considered the victim impact statement and denied appellant's motion to strike or disallow the same."
 {¶ 31} The trial court's July 27, 2007 judgment entry resentencing appellant indicates the trial court considered "any victim impact statements" in arriving at its sentencing determination. Appellant's second assignment of error alleges R.C. 2947.051, Ohio's statute requiring a trial court to, inter alia, consider victim impact statements during sentencing, is unconstitutional because it does not require the content of the statement to be proved beyond a reasonable doubt and denies a defendant his right to confront the victims of their crimes. We disagree.
 {¶ 32} Appellant premises his initial assertion upon the United States Supreme Court's decision in Blakely v. Washington (2004), 542 U.S. 296
and its progeny. To wit, appellant alleges that victim impact statements violate Blakely because they "require" a court to consider facts presented in the statement to enhance a sentence even though the facts have not been submitted to a jury and proved beyond a reasonable doubt. This argument lacks merit. *Page 10 
 {¶ 33} In Foster, supra, the Ohio Supreme Court addressed the effect of Blakely on Ohio's felony sentencing scheme. Although Foster held certain sections of the Ohio Revised Code unconstitutional and, as a result, severed the same, R.C. 2947.051 was not among the offending provisions. R.C. 2929.14(A) governs the minimum and maximum time to which a defendant can be sentenced under Ohio's felony sentencing law. R.C. 2947.051, while requiring a court to consider victim impact statements, does not allow a trial judge to sentence a defendant beyond the period allowed in R.C. 2929.14(A); rather, R.C. 2947.051 merely provides the trial court with assistance in arriving at an appropriate sentence. While R.C. 2947.051 helps guide a court's discretion in sentencing, it does not allow a court to transcend the limits of the felony ranges defined in R.C. 2929.14(A). As a result, R.C. 2957.051 does not run afoul of Blakely and, in this regard, is constitutional.
 {¶ 34} Next, appellant asserts that victim impact statements involve out of court testimonial statements and are therefore barred by the Confrontation Clause of the Sixth Amendment to the United States Constitution. In support, appellant cites Crawford v. Washington (2004),541 U.S. 36. In Crawford, the United States Supreme Court held that the Confrontation Clause bars "testimonial statements of a witness who did not appear at trial unless the witness was unavailable to testify and the defendant had a prior opportunity for cross-examination." Id. at 53-54.
 {¶ 35} First, similar to the language of the Sixth Amendment,Crawford does not address whether its holding applies to the sentencing phase of the trial. Accordingly, various Federal Circuit Courts have specifically held Crawford inapplicable to sentencing proceedings. SeeUnited States v. Katzopoulos (C.A. 6, 2006), 437 F.3d569, 576 *Page 11 
(holding "* * * there is nothing specific in Blakely, [United States v.]Booker [(2005), 543 U.S. 220] or Crawford, that would cause this Court to reverse its long-settled rule of law that [the] Confrontation Clause permits the admission of testimonial hearsay evidence at sentencing proceedings."); United States v. Luciano (C.A. 1, 2005), 414 F.3d 174,179 (holding "[n]othing in Crawford requires us to alter our previous conclusion that there is no Sixth Amendment Confrontation Clause right at sentencing."); United States v. Martinez (C.A. 2, 2005),413 F.3d 239, 243 ("Neither Crawford nor Booker * * * addressed the applicability of the right of confrontation to the sentencing context or the admissibility of hearsay testimony at sentencing proceedings.");United States v. Chau (C.A. 11, 2005), 426 F.3d 1318, 1323 ("TheCrawford opinion does not state that its rule applies at sentencing; it does not refer to sentencing."). Given the foregoing treatment ofCrawford, we decline to impute a Sixth Amendment right to confrontation at sentencing hearings.
 {¶ 36} This ruling is also consonant with Ohio's treatment of hearsay evidence in the context of the sentencing phase of a criminal proceeding. To wit, the Ohio Rules of Evidence, including those governing hearsay, are not applicable to sentencing hearings. Evid. R. 101(C)(3); see, also, State v. Williams (1986), 23 Ohio St.3d 16, 23. During the sentencing phase of a criminal proceeding, a court's sentence is based upon many contextual factors of the case, including the gravity of the offense and the character and history of the defendant. State v.Barker (1978), 53 Ohio St.2d 135, 150-151; see, also, State v.Cassidy (1984), 21 Ohio App.3d 100, 101. In order to develop a thorough appreciation for these factors, a trial court is vested with broad discretion to "consider information, gather facts concerning the circumstances of the offense and the *Page 12 
defendant's character and to determine an appropriate sentence."State v. Guzman, 10th Dist. No. 02AP-1440, 2003-Ohio-4822, at ¶ 25. Pursuant to R.C. 2947.051, the impact of the criminal act on a victim is a factor a trial judge must consider in arriving at a fair and just sentence. Such consideration does not violate a defendant's right to confrontation nor does it violate firmly established evidentiary principles.
 {¶ 37} Appellant's second assignment of error lacks merit.
 {¶ 38} Appellant's third assignment of error states:
 {¶ 39} "The trial court erred to the prejudice of the appellant when it failed to comply with Crim. R. 32(A)(4) in not making findings pursuant to R.C. 2929.11 and R.C. 2929.12."
 {¶ 40} Crim. R. 32(A)(4) provides:
 {¶ 41} "(A) Imposition of sentence.
 {¶ 42} "* * * At the time of imposing sentence, the court shall do all of the following:
 {¶ 43} "(4) In serious offenses, state its statutory findings and give reasons supporting those findings, if appropriate."
 {¶ 44} Under his final assignment of error, appellant contends the trial court erred by not supporting its sentencing determination with statutory findings pursuant to R.C. 2929.11 and R.C. 2929.12. and failing to provide reasons for its findings. We disagree.
 {¶ 45} Both R.C. 2929.11 and R.C. 2929.12 are "general guidance statutes," Foster, supra, at ¶ 36. These general guidance statutes survived Foster and apply to all felony sentencing exercises. Id. However, neither R.C. 2929.11 nor R.C. 2929.12 require a trial court to make specific findings on the record; see Foster, supra, at ¶ 42; see, also, State v. Coulter, 11th Dist. No. 2007-P-0028, 2008-Ohio-1021, at ¶ 17-22. *Page 13 
Rather, it is enough for a sentencing court "merely to `consider' the statutory factors." Foster, supra.
 {¶ 46} Here, the judgment entry of the trial court indicates it considered the statutory factors set forth under R.C. 2929.11 and R.C. 2929.12. As a result, the trial court met its obligations underFoster and satisfied the standard of propriety set forth under Crim. R. 32(A)(4). The trial court did not abuse its discretion in resentencing appellant within the statutory range for his convictions.
 {¶ 47} Appellant's final assignment of error is overruled.
 {¶ 48} For the reasons discussed herein, appellant's three assignments of error are overruled and the judgment of the Lake County Court of Common Pleas is affirmed.
DIANE V. GRENDELL, P.J., TIMOTHY P. CANNON, J., concur.
[1] Although a sentence is a necessary part of a conviction, a reversal of a sentence and subsequent order of resentencing does not vitiate the jury's or judge's determination that a defendant is guilty of the underlying offense. Res judicata still precludes a criminal defendant from raising "on remand or on subsequent appeal from a resentencing order, issues that could have been raised in his or her direct appeal." State v. Evans, 113 Ohio St.3d 100, 103, 2007-Ohio-861, citing State v. Saxon, 109 Ohio St.3d 176, 2006-Ohio-1245. *Page 1